COMMERCIAL UNION INSURANCE COMPANY, Appellant,

v.

**FORD MOTOR COMPANY et al., Appellees.**

No. 79–4117.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1980.

Decided Feb. 17, 1981.

As Modified on Denial of Rehearing and Rehearing En Banc April 24, 1981.

Robert A. Seligson, San Francisco, Cal., for appellant.

George W. Bullen (argued); Joseph J. DeHope, Jr., Bullen, McKone, McKinley, Gay & Keitges, Sacramento, Cal., on brief, for appellees.

Before GOLDBERG,* FERGUSON and BOOCHEVER, Circuit Judges.

FERGUSON, Circuit Judge:

John Meyers sued Ford Motor Company and Haberfelde Ford, Inc., a Ford dealership, for damages. He alleged that he sustained injuries proximately resulting from defendants' negligence in the manufacture, sale and service of his car.[1] He also asserted that both defendants breached implied warranties of safety. Immediately prior to trial, Meyers dismissed Ford as a defendant believing that he stood a better chance for recovery if Ford's expert witnesses did not testify and that there was

---

\* The Honorable Irving L. Goldberg, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. Section 877 has been interpreted to apply to joint or concurrent tortfeasors responsible for the same tort. Hence, the fact that the allega-

tions against defendants were not precisely the same does not prevent application of this section. *See, e. g., Jaramillo v. State*, 81 Cal. App.3d 968, 146 Cal.Rptr. 823 (1978); *De Cruz v. Reid*, 69 Cal.2d 217, 70 Cal.Rptr. 550, 444 P.2d 342 (1968).

scant likelihood of recovery against Ford. Meyers won and Haberfelde's insurer, Commercial Union Insurance Co., paid $2,875,000 in settlement of the $3,250,000 judgment.

Commercial Union then instituted the instant diversity suit against Ford for equitable indemnification. Ford defended on the basis of Cal.Code of Civ.Proc. § 877, which states:

Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—

(a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and

(b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors.

Ford claims its dismissal by Meyers was in good faith and that, as a dismissed party under § 877, it is not liable to Commercial Union for indemnification. Commercial Union counters that the dismissal was not a good faith settlement but rather a calculated tactical maneuver to which § 877 does not apply. The district court found in favor of Ford.

Reviewing the record, we find error in the district court's conclusion that a good faith settlement had taken place between Ford and Meyers. The court applied an erroneous test in making its decision. Accordingly, the judgment is reversed.

I.

■ Section 877 of the California Code of Civil Procedure prevents parties from seeking contribution from settling defendants. It does not refer to indemnification, the related remedial doctrine sought in this case by Commercial Union.[2] Recognizing that allowance of liberal indemnification would undercut the finality provided by the section, however, the California Supreme Court has held that standards governing contribution under § 877 apply to indemnification as well. *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 604, 146 Cal.Rptr. 182, 578 P.2d 899 (1978).

■ When we confront a situation not yet met by the California Supreme Court, we must seek the rule we believe that Court would adhere to were it confronted with a similar situation. *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir. 1980). In interpreting the relation of § 877 to the doctrine of indemnification, we must therefore examine the extensive effort of the California courts to develop the state's remedial rules under that section. Recent cases demonstrate concern for two competing policies.

First, courts interpret § 877 as reflecting a policy in favor of settlement. The clear intent of § 877 is to allow a defendant who settles in good faith a claim against him to be forever discharged from liability by contribution or otherwise. *Stambaugh v. Superior Court*, 62 Cal.App.3d 231, 235, 132 Cal.Rptr. 843 (1976). Recognizing that a plaintiff has the power to preserve claims against those defendants with the greatest ability to pay or the least public sympathy, the courts have emphasized the requirement that a settlement with codefendants be a "good faith" release from liability. *See,*

---

**2.** Under California law, the right of contribution refers to the ability of one who has discharged more than his share of a common burden to compel his co-obligors to pay their proportionate share. 14 Cal.Jur.3d Contribution & Indemnification § 1. The obligation adheres only where judgment has been rendered against joint tortfeasors. *Winzler & Kelly v. Superior Court*, 48 Cal.App.3d 385, 395 (1975). In contrast, indemnity refers to the right of a party to be compensated for loss resulting from legal action taken against him or her. 4 B. Witkin, Summary of California Law § 50, at 18 (1980 Supp.).

*River Garden Farms, Inc. v. Superior Court*, 26 Cal.App.3d 986, 103 Cal.Rptr. 498 (1972).

Second, the California courts have developed an equitable rule allocating liability among tortfeasors in proportion to fault. *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975), applied the rule of comparative negligence to California tort cases. *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978), developed a comparable rule of equitable indemnity. Aware that the ability of one defendant to seek indemnity from another could defeat the incentive to settle, *American Motorcycle* found that the two policies need not be mutually exclusive. It held that under § 877, a tortfeasor who has entered into a good faith settlement should be released from liability for indemnification. *Id.* at 604, 146 Cal.Rptr. 182, 578 P.2d 899.

This court is bound by these two goals of California law—equity and settlement. "[I]f the policy of encouraging settlements is permitted to overwhelm equitable financial sharing, the possibilities of unfair tactics are multiplied. Neither statutory goal should be applied to defeat the other." *River Garden Farm, supra*, at 998, 103 Cal. Rptr. 498. Hence, the expansion of § 877 to prevent a party from seeking indemnification from another should apply only when the policy of settlement has been furthered and a settlement is made in good faith.

## II.

In determining whether the policy of settlement has been furthered, we look to the conduct of the parties. When a plaintiff dismisses an action, the policy is furthered only when the dismissal resulted from a mutual decision to settle the dispute. At that stage of the inquiry, the testimony of counsel recounting the basis for dismissal is relevant.

■ Section 877 applies to settlement made in good faith only. Individuals not participating in the settlement are barred from seeking contribution only if the settling parties acted in good faith with respect to them. Hence, good faith of the dismissal alone is not sufficient. The dismissal must represent a settlement which is a good faith determination of relative liabilities. Only in this situation are both policies behind § 877—equity and settlement—furthered.

When a suit is dismissed prior to trial and a party seeks indemnification, the liability of the dismissed defendant may not be indicated to the court. Thus, where good faith is in issue, the parties may have to present evidence concerning liability beyond that introduced in the original trial. The evidence would be limited to considerations that went into the settlement and were present at the time of the settlement.

## III.

■ The district court did not analyze Meyers' dismissal of Ford to determine, first, if a settlement had occurred and, second, if the settlement was made in good faith. Instead, the district court reviewed the testimony of plaintiff's counsel regarding the decision to dismiss Ford in order to decide whether, as between the plaintiff and Ford, it was a good faith dismissal. But an affirmative response to this question would not satisfy § 877, as it would not establish the existence of a settlement or the good faith required towards interested individuals not participating in the dismissal.

The record reveals that the decision to dismiss was substantially a tactical maneuver by plaintiff's attorneys. It does not reflect the cooperative decision-making between parties which is the earmark of settlement. Nor does it reflect a consideration of relative liability. This case involves $3,250,000 in damages. Even a slight probability of liability on Ford's part would warrant significant contribution. There

was at least one expert prepared to testify that there was a design defect.

Moreover, a settlement, to the extent that it is dictated by the tactical advantage of removing a deep-pocket defendant because of the experts it could produce and the skilled trial attorneys it could retain, is not made in "good faith" consideration of the relevant liability of all parties. Accordingly, the court erred in finding that the settlement absolving Ford of any liability to Meyers was made in good faith. Haberfelde should be given its day in court to determine whether Ford is liable for partial indemnity.

As the California Court of Appeal noted in *River Garden Farms*:

> Any negotiated settlement involves cooperation, but not necessarily collusion. It becomes collusive when it is aimed to injure the interests of an absent tortfeasor. Although many kinds of collusive injury are possible, the most obvious and frequent is that created by an unreasonably cheap settlement. Applied *pro tanto* to the ultimate judgment, such a settlement contributes little toward equitable—even though unequal—sharing. As we noted earlier, unreasonably low settlements with the other tortfeasors and the fear of a large unshared judgment may propel the last remaining defendant into a settlement exceeding the plaintiff's remaining damages and transcending that defendant's equitable share. Prevention of collusion is but a means to the end of preventing unreasonably low settlements which prejudice a nonparticipating tortfeasor. The price of a settlement is the prime badge of its good or bad faith.

26 Cal.App.3d at 996, 103 Cal.Rptr. 498.

The policies served by § 877 are equity and the settlement of cases prior to trial.

The ability of a court to achieve equity among parties should not be abridged absent proof that a true settlement has occurred. California courts acknowledge the control given a settling plaintiff over the party defendants and the concomitant danger to equitable considerations. If, as here, the dismissal appears to be little more than tactical maneuvering by the plaintiff, the losing defendant should not be prevented from seeking equitable indemnification from a party who may be partially responsible.[3]

The judgment is REVERSED.

---

**3.** Though we do not consider legislation enacted after the district court considered this case, we are encouraged in our result by the passage of California Code of Civil Procedure § 877.6 on July 17, 1980, which confirms our conclusion that a settlement must be made in good faith before a joint tortfeasor is prevented from seeking indemnification.