[Civ. No. 24775. Third Dist. May 15, 1986.]

EX-CELL-O CORPORATION, Cross-complainant and Appellant, v. BRIAN HOLDENER, Cross-defendant and Respondent.

**COUNSEL**

James J. Duryea and Carol A. Harmon for Cross-complainant and Appellant.

Rust, Armenis & Schwartz and Michael P. Armenis for Cross-defendant and Respondent.

**OPINION**

**CARR, Acting P. J.**—Appellant Ex-Cell-O Corporation (Ex-Cell-O) appeals from a judgment dismissing its cross-complaint against respondent Brian Holdener in his personal capacity after the trial court determined Holdener had entered into a good faith settlement with plaintiff Mid-Valley Dairy Company (Mid-Valley). Ex-Cell-O contends this settlement was not made in good faith, alleging (1) Mid-Valley had an improper motive for settling its suit and (2) the settlement amount was disproportionate to Holdener's potential liability. We find Ex-Cell-O's position to lack merit and shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 20, 1981, during remodeling of Mid-Valley, a fire erupted which destroyed the dairy, with estimated damages of over $27 million to Mid-Valley.

Mid-Valley sued a number of parties, including Ex-Cell-O and the general contractor for the remodeling, the Holdener Construction Company, Inc. (HCC) of which Brian Holdener is vice-president. Ex-Cell-O then filed a cross-complaint for indemnity against HCC and other parties. Mid-Valley and HCC subsequently entered into a settlement agreement and HCC moved to dismiss Ex-Cell-O's cross-complaint pursuant to the good faith settlement provisions of Code of Civil Procedure sections 877 and 877.6.[1] The trial

---

[1]Code of Civil Procedure section 877 provides, in relevant part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—. . . [¶] (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors."

Code of Civil Procedure section 877.6 at the time in question read: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors, upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing. Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced.

"(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto or the court may, in its discretion, receive other evidence at the hearing.

"(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

"(d) The party asserting the lack of good faith shall have the burden of proof on that issue." (Stats. 1980, ch. 562, § 1, p. 1549.)

court ruled the settlement was made in good faith and dismissed the cross-complaint.[2]

In early 1984, after the trial court dismissed the cross-complaint against HCC, Mid-Valley contacted Brian Holdener about serving as a witness on its behalf. As vice-president of HCC, Holdener was familiar with the costs of the dairy remodeling and could testify as to the damages Mid-Valley sustained. He agreed to serve as Mid-Valley's witness.[3]

In June or July 1984, Ex-Cell-O filed a cross-complaint against Holdener personally. In the meantime, Mid-Valley's attorneys spoke to Holdener's attorney, Mr. Armenis, and informed him Mid-Valley would serve Holdener as a Doe but would then dismiss the complaint in exchange for a waiver of costs and an agreement not to sue for malicious prosecution.[4] Mr. Armenis viewed Holdener as free of liability and agreed to this proposed course of action. Approximately 10 days after naming Holdener in its suit, Mid-Valley dismissed him as a party for a waiver of costs and an agreement not to sue.

Holdener moved to dismiss Ex-Cell-O's cross-complaint, arguing his good faith settlement with Mid-Valley barred the cross-action. Ex-Cell-O contended the settlement was not made in good faith and was grossly disproportionate to Holdener's potential liability. As evidence of Holdener's purported liability, Ex-Cell-O asserted building and fire code violations contributed to the spread of the fire. Ex-Cell-O further asserted plaintiff and Holdener settled only to permit Holdener to testify against Ex-Cell-O. Holdener disputed these claims and submitted depositions from the attorneys involved in the settlement, which set forth the belief of these attorneys that Holdener was not liable for damages and that the case was dismissed to "streamline" and "clean up" the lawsuit.

The trial court, finding the settlement to be properly motivated and fairly representative of Holdener's potential liability, dismissed Mid-Valley's cross-complaint. ▮ ▮▮▮ This appeal followed.[5]

---

[2]We reviewed appellant's challenge to this ruling in our unpublished decision (*Mid-Valley Dairy Company* v. *Ex-Cell-O Corporation*, 3 Civil 24049, filed September 30, 1985) in which we remanded for further hearing as the trial court had failed to apply the proportionality rule of *Tech-Bilt, Inc.* v. *Woodward Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159], which was decided by the Supreme Court subsequent to the hearing at issue.

[3]Plaintiff's attorney stated Holdener would be a percipient witness, but "out of an abundance of caution," she also designated him as an expert witness.

[4]Plaintiff's motive for naming Holdener as a Doe is unclear as plaintiff's attorneys invoked the work-product privilege in deposition and declined to answer appellant's questions on this issue.

[5]This is not an appealable order under Code of Civil Procedure section 904.1.

In 1984, however, section 877.6 was amended to provide for review, by writ of mandate,

## DISCUSSION

In our unpublished decision in the appeal of Mid-Valley's settlement with HCC (*Mid-Valley Dairy Company* v. *Ex-Cell-O Corporation* (3 Civ. 24049)), we reviewed previous court decisions interpreting the good faith settlement provisions of Code of Civil Procedure sections 877 and 877.6 as follows:

"In *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986 [103 Cal.Rptr. 498], this court first addressed the issue [of whether a settlement was made in 'good faith']. After reviewing the history of section 877, we concluded 'the good faith release clause extends the obligation of good faith beyond the parties to the negotiations, embracing an absent tortfeasor.' (*Id.*, at p. 996.) We observed that 'the most obvious and frequent' injury created by collusion between settling parties 'is that created by an unreasonably cheap settlement' and that '[t]he price of a settlement is the prime badge of its good or bad faith.' (*Ibid.*) We concluded, therefore, that 'bad faith' settlements 'includ[e] those which are so poorly related to the value of the case as to impose a potentially disproportionate cost on the defendant ultimately selected for suit.' (*Id.*, at p. 997.)

"The *River Garden Farms* approach was subsequently followed by Division Two of the First Appellate District in *Lareau* v. *Southern Pac. Transportation Co.* (1975) 44 Cal.App.3d 783, 794-797 [118 Cal.Rptr. 837]. *River Garden Farms* was adhered to as well by the Ninth Circuit Court of Appeals in *Commercial U. Ins. Co.* v. *Ford Motor Co.* (9th Cir. 1981) 640 F.2d 210, 214, and *Owen* v. *United States* (9th Cir. 1983) 713 F.2d 1461, 1465. In *Commercial Union, supra,* the court observed a dismissal of a settling tortfeasor must not be 'a tactical maneuver by plaintiff's attorney' but, rather, must 'reflect the cooperative decision-making between parties which is the earmark of settlement' and 'must represent a settlement which is a good faith determination of relative liabilities.' (640 F.2d at p. 213; accord, *Owen* v. *United States, supra,* 713 F.2d at p. 1464.)

"The most recent appellate court opinion to follow *River Garden Farms* is *Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499 [203 Cal.Rptr. 825], in which Division Seven of the Second District established

---

a decision on whether a settlement was made in good faith. (§ 877.6, subd. (e).) This amendment took effect in January 1985, after both the hearing on the instant petition and the court's order dismissing the cross-complaint.

Neither of the parties has raised this as an issue. However, in the interests of judicial economy, we treat this appeal as a writ of mandate and reach the merits. (See *Barth-Wittmore Insurance* v. *H. R. Murphy Enterprises, Inc.* (1985) 169 Cal.App.3d 124, 130 [214 Cal.Rptr. 894].)

a test for determining whether a settlement amount constitutes good or bad faith, holding 'that a defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.' (*Id.*, at p. 509.)

"In 1981, however, the Court of Appeal for the Fifth District departed from *River Garden Farms.* In *Dompeling* v. *Superior Court* (1981) 117 Cal.App.3d 798 [173 Cal.Rptr. 38], the court concluded a disproportionate settlement sum is not evidence of bad faith but that bad faith is established only when the settling parties engage in some tortious or other wrongful conduct toward the nonsettling defendant. 'The settling parties owe the nonsettling defendants a legal duty to refrain from tortious or other wrongful conduct; absent conduct violative of such duty, the settling parties may act to further their respective interests without regard to the effect of their settlement upon other defendants.' (*Id.*, at pp. 809-810.) The Fifth District adhered to this rule in *Cardio Systems, Inc.* v. *Superior Court* (1981) 122 Cal.App.3d 880, 884-885 [176 Cal.Rptr. 254], in which the court approved a settlement that was apparently made solely for tactical reasons, and in *Burlington Northern R.R. Co.* v. *Superior Court* (1982) 137 Cal.App.3d 942.

"Finally, in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159], the Supreme Court resolved the conflict in favor of *River Garden Farms,* specifically disapproving *Dompeling* and its progeny. (*Id.*, at p. 500, fn. 7.) ■ The court set forth the proper line of inquiry for trial courts to follow in determining whether a settlement has been reached in 'good faith' within the meaning of sections 877 and 877.6. 'A[n] . . . appropriate definition of "good faith," . . . would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries. This is not to say bad faith is "established by a showing that a settling defendant paid less than his theoretical proportionate or fair share." [Citation.] Such a rule would unduly discourage settlements. . . . Moreover, such a rule would tend to convert the pretrial settlement approval procedure into a full-scale minitrial [citation]. [¶] But these considerations do not lead to the conclusion that the amount of the settlement is irrelevant in determining good faith. Rather, the intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling de-

fendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. [Citations.] Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of the settlement. "[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." [Citation.] The party asserting the lack of good faith, who has the burden of proof on that issue (§ 877.6, subd. (d)), should be permitted to demonstrate, if he can, that the settlement is so far "out of the ballpark" in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a "settlement made in good faith" within the terms of section 877.6.' (38 Cal.3d at pp. 499-500.)" (*Mid-Valley Dairy Company* v. *Ex-Cell-O Corporation* (Sept. 30, 1985) 3 Civ. 24049, typed opn. pp. 6-10.)

■ *Tech-Bilt* expressly resolved a conflict in appellate court opinions, and therefore applies retroactively to the present case. (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 37 [196 Cal.Rptr. 704, 672 P.2d 110].)

■ The hearing on the settlement between Holdener and Mid-Valley occurred before *Tech-Bilt* was decided but after *Torres, supra,* 157 Cal.App.3d 499. Counsel specifically directed the trial court's attention to *Torres,* which established the test ultimately adopted in *Tech-Bilt,* i.e., that the "settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." (*Torres, supra,* 157 Cal.App.3d at p. 509; *Tech-Bilt, supra,* 38 Cal.3d at p. 499.)

The trial court held a hearing on the alleged disproportionality of Holdener's settlement and the record amply supports the trial court's decision of a good faith settlement. The court noted the fire expert's declaration submitted by Ex-Cell-O was conclusionary and failed to explain how the fire wall did not comply with local fire codes and that Mid-Valley failed to establish how Holdener personally, rather than HCC, his company, was liable for any alleged defect.

The trial court further determined there was nothing improper in Mid-Valley's decision to settle with Holdener to "clean up" the pleadings to try the case only against appellant. We reject the concept that "cleaning up the pleadings" is a proper basis for finding a good faith settlement as envisioned by *Tech-Bilt, supra.* Such a purpose does not reflect "a good faith determination of relative liabilities" (*Commercial U. Ins. Co.* v. *Ford Motor Co., supra,* 640 F.2d at p. 213) or the good faith toward the nonsettling

defendant required by sections 877 and 877.6. (See *Tech-Bilt, supra,* 38 Cal.3d at pp. 496-497.)

However, if the reason for "cleaning up" the pleadings is plaintiff's belief that the settling defendant bears minimal or no liability for the plaintiff's injuries, a good faith motivation may still be found. In deposition, Mid-Valley's attorneys stated they viewed Holdener as having no liability for the damages caused by the fire. Holdener's attorney stated in his deposition that he viewed Ex-Cell-O's action against his client as frivolous. No purpose is served by requiring a plaintiff to expend energy and resources to continue with a suit against a party it views as nonculpable. In this limited situation only, when upon application of the proportionality rule of *Tech-Bilt* the basis of the settlement is lack of liability of the settlor, the incidental cleaning up of the pleadings is a mere by-product of the settlement, not the motivation for it.[6]

## DISPOSITION

The judgment is affirmed.

Sparks, J., and Stroud, J.,* concurred.

---

[6]Ex-Cell-O contends the court erred in disregarding the "collusive" motive for this settlement, i.e., Mid-Valley's desire to use Holdener as its expert witness. The depositions of the attorneys involved in the settlement indicate that Holdener agreed to be Mid-Valley's witness *after* the trial court determined Mid-Valley's settlement with HCC was made in good faith and *before* Ex-Cell-O filed its cross-complaint against Holdener. In *Commercial U. Ins. Co., supra,* 640 F.2d at pages 213-214, the court severely criticized plaintiff's settlement with a deep-pocket defendant, finding the settlement was made solely for the purpose of removing the defendant's potentially harmful expert witness. In the instant case, the settlement between plaintiff and Holdener did not prevent relevant evidence from being heard. In fact, using Ex-Cell-O's theory, a contrary result occurs. Given these circumstances and Holdener's lack of personal liability, we conclude the court did not err.

*Assigned by the Chairperson of the Judicial Council.