[No. B020916. Second Dist., Div. Seven. Aug. 18, 1987.]

NORA DORIS GRESHKO, Cross-complainant and Appellant, v. COUNTY OF LOS ANGELES et al., Cross-defendants and Respondents.

COUNSEL

Parker, Stanbury, McGee, Babcock & Combs, Lascher & Lascher and Edward L. Lascher for Cross-complainant and Appellant.

Collins, Collins, Muir & Traver, Gordon A. Opel, Brian K. Stewart, Murchison & Cumming and Robert A. Grantham for Cross-defendants and Respondents.

OPINION

LILLIE, P. J.— ■ ■■■ ■ ■ Cross-complainant Nora Greshko appeals from an order dismissing her cross-complaint for indemnity against cross-defendants County of Los Angeles (County) and City of Industry (City) upon the determination by the trial court that County and City had entered into a good faith settlement with plaintiffs Cipriano Salas and Helen Salas.[1]

I

FACTUAL AND PROCEDURAL BACKGROUND

In 1978, Cipriano and Helen Salas sued Greshko, County and City for damages arising out of an automobile collision in which Greshko made a left-hand turn in an intersection with no separate left-turn lanes, in front of plaintiff Cipriano Salas who was traveling in the opposite direction. Plaintiff

---

[1] As will be explained in more detail below, Greshko's cross-complaint for indemnity was actually filed as a separate action which, at the time of the determination of the good faith of the settlements, was consolidated with plaintiffs' personal injury action which had originally been brought against Greshko, County and City. Plaintiffs had dismissed the County and City in exchange for a waiver of costs, which are the settlements in issue on this appeal. Because the order of dismissal of Greshko's cross-complaint left no issues to be decided as to City and County, such order is appealable as a final judgment. (Code Civ. Proc., §§ 577, 581d, 904.1, subd. (a); see also *Justus* v. *Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122].) The ruling on the motions for determination of good faith settlement is reviewable on appeal from the judgment (order of dismissal) as an "intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from . . . ." (Code Civ. Proc. § 906.) Without merit is respondent City's argument that Greshko has no right to an appeal because she filed an earlier petition for writ of mandate challenging the ruling as to the good faith of the settlements, which writ was summarily denied. The summary denial without opinion, of a petition for a writ is not res judicata. (*McKnight* v. *Faber* (1986) 185 Cal.App.3d 639, 651, fn. 4 [230 Cal.Rptr. 57].)

was rendered quadriplegic as a result of the accident. In September 1981, two weeks before the date set for trial, plaintiffs dismissed their complaint as to City in exchange for a waiver of costs and any cause of action for malicious prosecution. On the day set for trial, plaintiffs dismissed the County in exchange for a waiver of costs. The case proceeded to trial against Greshko, who had insurance policy limits of $50,000. The jury awarded plaintiffs $1.9 million damages. Greshko appealed the judgment (*Salas* v. *Greshko,* B007857, unpub. opn. filed Sept. 11, 1985) on the grounds the trial court erred in (1) excluding a defense of Salas's nonuse of a seatbelt and (2) excluding the defense of the unsafe nature of the intersection where the accident occurred, and the City and County's responsibilities therefor. The Court of Appeal found error with respect to the seatbelt defense and reversed the judgment on that ground, expressly stating it did not resolve the second issue. The court stated: "Manifestly, the limitations which the foregoing rules [set out in *Klemme* v. *Hoag Memorial Hospital Presbyterian* (1980) 103 Cal.App.3d 640, 644-645 [163 Cal.Rptr. 109], discussing the impropriety of litigating the issue of apportionment of fault among defendants and other concurrent tortfeasors not before the court] placed on appellant's presenting the issue and defense of the negligence and fault of city and county for the causation of this accident, resulted because of the trial court's original ruling [at the time of trial] which is complained of as error, in denying appellant the right to cross-complain against those entities. Without their presence in the action, their negligence and fault could not be fully and fairly determined and their proportion of fault could not be assigned. Nonetheless, we do not resolve this second issue. We hold only that inasmuch as the matter will be retried, appellant is free to make the motion for leave to cross-complain. The trial court is in a better position to determine the motion, if made, based upon the posture of the entire matter at that time . . . ."

In July 1982, during the pendency of the above appeal, Greshko filed, as a separate action, a complaint for equitable indemnity, based on principles stated in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], against City and County; in May and June, 1985, City and County respectively answered the complaint. In an affirmative defense pleaded in its answer, County asserted, apparently for the first time as to Greshko, that Greshko's action is barred because County reached a good faith settlement with plaintiffs. In January 1986, upon the remittur having been filed, Greshko filed a motion to consolidate her action with the Salas action and to specially set the matter for trial. In February 1986, City and County filed motions for determination of good faith settlement; City also moved for dismissal of Greshko's complaint and County sought an order barring her claim for comparative indemnity. After hearing, the court granted the motion to consolidate the actions, determined the

settlements to be in good faith, and, deeming Greshko's complaint to be a cross-complaint, dismissed it. Greshko filed timely notice of appeal from the order of dismissal. Her primary contentions are (1) the almost five-year delay from the time of the purported settlements in 1981 until the filing of the motions for determination of good faith settlement constitutes waiver, estoppel or laches with respect to respondents' rights to obtain a judicial determination of good faith under Code of Civil Procedure section 877.6; (2) there was no statutory or case authority for summarily dismissing the indemnity action; (3) the dismissals were not intended to be settlements; and (4) there was no substantial evidence of good faith under *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159].

## II

### WAIVER, ESTOPPEL AND LACHES

■ Appellant's claims of waiver, estoppel and laches lack merit.[2] Code of Civil Procedure section 877.6 provides no time limit after settlement within which a motion for determination of good faith of the settlement must be brought. Further, subdivision (a) of section 877.6 provides "[a]ny party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement . . . ." (Italics added.) Thus, appellant herself could have brought a motion to bring the issue before the court at an earlier date. Her complaint for indemnity, filed in 1982, alleges that plaintiffs' dismissals of the City and County were in bad faith and a result of a tortious agreement to suppress experts and records concerning the subject intersection. Nothing in our record shows that respondents were aware of the indemnity action until they appeared in it in mid-1985. As there is no evidence showing appellant relied on any conduct of respondents to her detriment, she has not shown an element of equitable estoppel. (*Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].) Nor can we infer from respondents' silence that they waived or intentionally relinquished their right to a judicial determination of good faith of their respective settlements, because the statute does not set out any mandatory time

---

[2] We note that the record is devoid of any indication that Greshko raised these issues in the trial court. While these factual issues ordinarily may not be raised for the first time on appeal (*Worthen* v. *Jackson* (1956) 139 Cal.App.2d 615, 618 [293 P.2d 797] [laches]; *Juodakis* v. *Wolfrum* (1986) 177 Cal.App.3d 587, 593 [223 Cal.Rptr. 95] [estoppel]; *Bartley* v. *Karas* (1983) 150 Cal.App.3d 336, 341 [197 Cal.Rptr. 749] [waiver]), respondents have not argued a waiver of these points, so we proceed to address them on their merits. (See, e.g. *Riverside Steel Construction Co.* v. *William H. Simpson Construction Co.* (1985) 190 Cal.App.3d 1175, 1184, fn. 3 [227 Cal.Rptr. 424].)

limits within which a motion must be made. Moreover, appellant has not shown that she suffered any prejudice resulting from respondents' delay, a necessary element of laches. (*Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359-360 [82 Cal.Rptr. 337, 461 P.2d 617].)

## III

### DISMISSAL OF INDEMNITY ACTION

■ Appellant herein does not appear to contend lack of notice that respondents were seeking an order of dismissal, and cannot appropriately claim lack of notice, because City specifically requested dismissal and County sought an order barring the indemnity claim, which is tantamount to a dismissal. Rather, appellant's contention appears to be that the court had no statutory or common law authority to dismiss the indemnity action. We disagree. A motion to dismiss a claim for partial or comparative indemnity, based on comparative negligence or comparative fault, is a proper procedural vehicle to implement that subdivision of section 877.6 which states "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for . . . partial or comparative indemnity . . . ." (Code Civ. Proc., § 877.6, subd. (c).)

Further, "A court on its own motion may '[s]trike out any irrelevant, false, or improper matter inserted in any pleading' and '[s]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court.' (Code Civ. Proc., § 436.) Under this statutorily enumerated power of the court to strike irrelevant matter and the court's inherent power (Code Civ. Proc., § 187) to limit the focus of the proceedings to the issues framed by the remaining viable pleadings, the court did not err in striking the cross-complaint, which, after the good faith determination, became irrelevant to resolution of the remaining issues. This ministerial act could be done without notice." (*Hale* v. *Laden* (1986) 178 Cal.App.3d 668, 673 [224 Cal.Rptr. 182]; *contra*: *IRM Corp.* v. *Carlson* (1986) 179 Cal.App.3d 94, 103, fn. 6 [224 Cal.Rptr. 438].) An action may be dismissed by the court when a motion to strike the whole of the complaint is granted without leave to amend. (Code Civ. Proc., former § 581, subd. (c); see now § 581, subd. (f)(3).)

## IV

### DISMISSALS WERE INTENDED AS SETTLEMENTS

■ Appellant contends that "a settlement cannot be in good faith unless the transaction is intended to *be* a settlement . . ." and "[t]he only conceiv-

able way in which City and County could mount a rational argument against waiver, laches and estoppel would be by denying that, in 1981, they intended the dismissal/waiver scheme to constitute settlement . . . ." (Original italics.) As hereinabove set up in paragraph II, we disagree that the only way respondents can validly attack the waiver, laches and estoppel issues is to deny they intended the dismissals to constitute a settlement. There is evidence, in the form of declarations of counsel for the Salas plaintiffs, that the dismissals were part of an agreement to settle the case; there is no evidence the dismissals were not intended to be settlements. Whether those settlements were in good faith is the crux of this appeal, and we proceed to discuss that issue.

V

GOOD FAITH OF SETTLEMENTS

■ Appellant and respondents agree that the standards for determining the good faith of the instant settlements under Code of Civil Procedure section 877.6 are enunciated by the California Supreme Court in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d 488: "[T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. [Citation.] Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement. '[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.' (*Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 509 . . . .) The party asserting the lack of good faith, who has the burden of proof on that issue (§ 877.6, subd (d)), should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." (*Id.,* at pp. 499-500.) The equitable policies include both the encouragement of settlements and the equitable allocation of costs among multiple tortfeasors. (*Id.,* at pp. 498-499.)

■ The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any

counter-affidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing. (Code Civ. Proc., § 877.6, subd. (b).) A determination as to whether a settlement is in good faith must be left to the discretion of the trial court. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 502.) ▇ The concept of judicial discretion has been defined as " 'the sound judgment of the court, to be exercised according to the rules of law.' . . . [T]he term judicial discretion 'implies absence of arbitrary determination, capricious disposition or whimsical thinking.' [Citation.] Moreover, discretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72.)

▇ In support of their motions for determination of good faith settlement, respondents presented two similar declarations of the Salases' attorney who declared that with respect to City and County, he entered into agreements to dismiss them as defendants in exchange for a waiver of costs; before agreeing to dismiss these defendants, he consulted with the liability expert he had retained to testify at trial; based on the expert's opinions and his own analysis of the case, he concluded that neither the City nor the County was liable to plaintiffs; rather than risk exposing plaintiffs to liability for a cost bill, he entered into the agreement with the City; and his professional opinion that plaintiffs did not have a case against County from a liability standpoint was the sole motivating factor in his agreeing to dismiss the County for a waiver of costs.

In opposition to the motions, Greshko's attorney submitted the affidavit of his expert engineer, Lewis Collin Moore, who had testified on Greshko's behalf at the first trial of the Salases' action. Moore stated that at about the time of trial, he had a conversation with County counsel who asked him if he, Moore, had been retained by the County and, if so, Moore should not work for Greshko according to his agreement with Salases' attorney that the County experts would not be released to anyone else; his later conversations with other County personnel left him with the understanding that the County's pre-1978 accident records for the subject intersection were transferred to the control of the City of Industry or its attorneys; in light of a preaccident study recommending left-turn pockets and traffic signals, such accident records would be important for his trial testimony; based on what he heard and his general experience, he concluded it was probable there was a preexisting settlement by plaintiff with the County which effectively resulted in suppression of evidence and consequent inability for him to properly evaluate and testify to the dangerous character of the intersection.

Greshko's opposition also contained portions of the trial testimony of Moore and another of her experts, Allen Weber, who both testified in detail

concerning their opinion that the intersection was dangerous for left-turning vehicles because of the lack of a left-turn pocket. Moore expressed the opinion that "the cause of the accident was a poorly designed intersection which essentially trapped the two persons that were involved in the accident . . . ."

At the hearing on the motion, in response to a question by the court as to whether Greshko would be able to respond to damages in seven figures, her attorney stated that she is retired on social security with no assets. The court then asked if her insurance policy limit of $50,000 was tendered and the following colloquy occurred: "MR. SCHAERTEL [Greshko's attorney]: The policy was first offered a few months after the accident. What happened, your honor, was that the plaintiff made a demand for the policy along with some other demands that the insurance company could not comply with such as sworn affidavits as to assets, et cetera, so they wrote back and said that as soon as they were able to confirm that Mr. Salas was, in fact, a quadriplegic, that it appears as though they would be able to send the policy, because from the police report it looked like they would send the policy, and they asked for a medical authorization, and that was responded to by a letter saying, well, you are in bad faith because you didn't send the $50,000.

"THE COURT: Let me get down to the bottom line. Essentially their theory of recovery against your client is going to be at some later date on a bad faith theory, I would assume, in another lawsuit.

"MR. KRAMER [Salases' attorney]: That's correct, your honor."

The court then concluded as follows: "[I]t seems to me that the . . . settlement that was a dismissal for a waiver of costs was entered into in good faith. When you release a couple of defendants that are target defendants on the theory that you have determined you cannot recover against them and your only real course of action of recovering anything is, no. 1, proving up against your client [Greshko] and then waiting another few years to perfect a bad faith claim, that's pretty convoluted in order to, you know—I mean, to say there is something rigged about that or smacks of collusion, you know. It would be one—you might have some sort of an argument there if your client had deep pockets and all that, but I don't think you have got a leg to stand on. I think your—that their chance of recovery, of collecting money is somewhat tenuous. They have got to go through two steps to do it. [¶] So, I am going to go ahead and grant—find that the settlement was entered into in good faith."

When Greshko's attorney pointed out there was testimony that the intersection was dangerous, the court responded: "Oh, I know that. I mean your

people—that's what you would expect them to say. But this is something that is tantamount to a declaration against interest. I mean your stuff is all self-serving. You would expect your people to testify that way."

On the above record, we are compelled to find the court abused its discretion by failing to properly apply the *Tech-Bilt* factors to the evidence before it. On this record, there is no speculative damage problem, nor is there any evidence the settling parties, City and County, were insolvent or lacked the ability to respond to substantial damages. Irrelevant also is the factor that amounts paid in settlement are smaller than those paid after trial because respondents paid nothing to plaintiffs. The remaining factors to consider are (1) respondents' proportionate share of liability and (2) the existence of collusion, fraud, or tortious conduct.

 With respect to the factor of respondents' proportionate liability, the trial court's ruling that the settlement was in good faith was predicated upon its finding of zero liability on the part of respondents, the court choosing to rely on the declaration of the Salases' attorney and to reject Greshko's expert testimony. Such reliance constituted an abuse of discretion because respondents' conclusory declarations are not competent evidence on the issue of respondents' liability. All affidavits relied upon as probative must state evidentiary facts; they must show facts and circumstances from which the ultimate fact sought to be proved may be deduced by the court. (*Thomas J. Palmer, Inc.* v. *Turkiye Is Bankasi A.S.* (1980) 105 Cal.App.3d 135, 148-149 [164 Cal.Rptr. 181].) Affidavits or declarations setting forth only conclusions, opinions or ultimate facts are to be held insufficient; even an expert's opinion cannot rise to the dignity of substantial evidence if it is unsubstantiated by facts. (*Atiya* v. *Di Bartolo* (1976) 63 Cal.App.3d 121, 126 [133 Cal.Rptr. 611].)

 While respondents' declarations may be sufficient on the issue of Salases' attorney's beliefs and motivation for the settlements, his declarations are insufficient on the issue of respondents' proportionate liability. Plaintiffs' attorney did not even attempt to lay the slightest factual foundation for his opinions. He does not even state what specific facts he relied upon, or what the expert opinion was that supported his conclusion that respondents had no liability to plaintiffs. The trial court also erroneously rejected the substantial evidence of liability presented by Greshko's experts as "self-serving," finding respondents' declarations to be more credible as "declarations against interest." Because we find Salases' attorney's declarations to be entirely conclusory and insufficient on the issue of respondents' liabilities, the matter of credibility does not even arise. Moreover, we question whether they are declarations against interest. As pointed out by appellant: "If such ipse dixit were sufficient to have a finding of good faith rest

upon it, it would render the whole thing farcical, since any attorney who represents the settling plaintiff will *always* say he did what he thought was right for at least two reasons: Lawyers do normally act as they believe to be right and, further, any lawyer who didn't say so would face discipline and malpractice liability. . . . Thus, reliance on such a declaration amounts only to a hollow ritual." (Original italics.)

We also agree with appellant's observation that the objection to her experts' testimony as "self-serving" in untenable. The testimony of an interested party is competent and admissible. (*Zinn* v. *Ex-Cell-O Corp.* (1957) 148 Cal.App.2d 56, 69 [306 P.2d 1017].) Because appellant came forward with competent evidence of liability on the part of respondents, which was not effectively countered, the court abused its discretion in determining on this record that respondents can be assigned no portion of liability. Given the severity of plaintiffs' injuries, even a slight percentage of relative liability would warrant a significant contribution towards plaintiffs' damages. Thus, the court abused its discretion in its consideration of the important factor of the relative liabilities of respondents.

In considering the factor of fraud and collusion, the trial court herein appeared to find no collusion or tortious conduct with respect to the instant settlements because it considered plaintiffs' chance of collecting a judgment tenuous since it involved two steps and Greshko did not have deep pockets. What the trial court seems to have ignored here is that behind Greshko is a deep pocket insurance company, the target of the contemplated second lawsuit. At the hearing on the motions, plaintiffs' attorney quite candidly admitted a plan to first prove up their case against Greshko and then to pursue a bad faith claim against Greshko's insurer. Such plan could be perceived as evidence of a motivation entirely unrelated to a good faith determination of relative liabilities. Viewed in this light, the dismissals were simply tactical decisions designed to pave the way for a subsequent bad faith lawsuit. While no case has been brought to our attention which addresses the issue of whether the above type of motivation constitutes fraudulent, collusive, or "tortious conduct aimed to injure the interests of nonsettling defendants," (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499) such a purpose does not necessarily reflect a good faith determination of relative liabilities. In addition, the Legislature intended the "good faith" concept in section 877.6 to be a flexible principle imposing on reviewing courts the obligation to guard against the numerous ways in which the interests of nonsettling defendants may be unfairly prejudiced. (*Rankin* v. *Curtis* (1986) 183 Cal.App.3d 939, 945 [228 Cal.Rptr. 753].) The court in *Ex-Cell-O Corp.* v. *Holdener* (1986) 181 Cal.App.3d 25 [226 Cal.Rptr. 57], rejected the concept that "cleaning up the pleadings" by dismissing a defendant is a proper basis for finding a good faith settlement

as envisioned in *Tech-Bilt* because such a purpose does not reflect a good faith determination of relative liabilities or the good faith toward the non-settling defendant required by sections 877 and 877.6, Code of Civil Procedure. (*Id.,* at pp. 32-33.) Similarly, a dismissal designed to avoid complicating a case against a defendant so as to set up a later bad faith case against that defendant's insurer is fundamentally unfair to the insured defendant, with whom a plaintiff then would have little incentive to settle. Such a dismissal also burdens the court with more litigation and does not further the equitable policies of sections 877 and 877.6. "Moreover, from the standpoint of the public interest and the legal process, a prime value in encouraging settlement lies in 'remov[ing] [the case] from the judicial system, and this occurs only when all claims relating to the loss are settled.'" (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 500.)

 We therefore conclude that appellant made an adequate showing that the settlement was "out of the ballpark" in relation to a rough approximation of respondents' proportionate liability. This showing, in conjunction with an acknowledged plan on plaintiffs' part to pursue a later claim for bad faith against Greshko's insurer, is evidence of conduct aimed to injure the interests of a nonsettling defendant. The determination on this record that the settlements were in good faith was thus an abuse of discretion.

## DISPOSITION

The order of dismissal is reversed. Appellant to have her costs on appeal.

Thompson, J., and Johnson, J., concurred.

Respondents' petition for review by the Supreme Court was denied November 10, 1987.