Filed 12/8/22  Ramos v. Smile Brands CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LAURA RAMOS, | |
| Plaintiff and Respondent, | E077394 |
| v. | (Super.Ct.No. CIVSB2102278) |
| SMILE BRANDS, INC. et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Wilfred J. Schneider, Jr., Judge.  Affirmed.

CDF Labor Law, Todd R. Wulffson, Ashley A. Halberda, Alessandra C. Whipple and Amy S. Williams for Defendants and Appellants.

Broslavsky & Weinman, Zack Broslavsky, Jonathan A. Weinman; Hannemann Law Firm, Brian G. Hannemann; and Kathleen Doherty for Plaintiff and Respondent.

Plaintiff and respondent Laura Ramos (Ramos) sued her former employer, defendants and appellants Smile Brands, Inc.; Smile Brands Group, Inc.; Smile Brands Finance, Inc.; Smile Brands Holdings 2, LLC; Onesmile, LLC; Onesmile Intermediate, LLC; and Onesmile Holdco, LLC (collectively, Brands) for various causes of action pertaining to the termination of her employment. Brands moved to compel arbitration. (Code Civ. Proc., § 1281.2.) The trial court denied the motion. Brands contend the trial court erred because the parties have a valid arbitration agreement. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

A.    COMPLAINT

Brands comprise a dental business with "8,000 dedicated team members at over 650 affiliated dental offices around the United States." Beginning in 2005, Ramos worked as an office manager for Brands at several offices in the Inland Empire. Ramos occasionally requested time off from work "to care for her disabled son who is quadriplegic . . . and requires constant care." In March 2020, Ramos requested that she be furloughed to protect herself and her son from contracting Covid-19. Brands informed Ramos "that most of the Inland Empire staff would be furloughed . . . due to COVID-19 restrictions."

On May 2, 2020, Brands terminated Ramos's employment and replaced her with another employee. Ramos "had greater seniority than most Office Managers in the area that were retained." Ramos believed she was fired because she "need[ed] to care for her permanently disabled son and for engaging in protected activity," i.e., requesting time off to care for her disabled son.

2

### B. MOTION TO COMPEL ARBITRATION

Brands moved to compel arbitration. Brands have a software program, named "SmileU," that they use for human resource documents and employee training. The arbitration agreement was presented as a required document, in a section of SmileU entitled " 'Courses I Have to Do.' " Upon opening the arbitration agreement, an employee would have needed to scroll through the entire text of the agreement before checking a box at the bottom of the agreement indicating that the employee consented to the terms of the agreement. The arbitration agreement included an opt-out provision that required an opt-out form be mailed to human resources.

Brands asserted that, on July 11, 2017, Ramos logged into SmileU with her unique username and password, and she checked the box consenting to the arbitration agreement. Brands provided a copy of the arbitration agreement, which did not include Ramos's name, did not include any signatures, and did not include a checkmark at the bottom of the agreement. Brands also provided a "Training Record," which is a list of training and human resource documents allegedly completed by Ramos. The Training Record reflects Ramos completed the arbitration agreement on July 11, 2017.

Brands also provided the declaration of Mary Phillips (Phillips), who has been Smile Brands Group, Inc.'s Manager of Learning and Development since March 2017. Phillips is "one of the custodians of record for [Brands] and [is] responsible for maintaining corporate training and policy files." Phillips declared that "the documents maintained in Ramos'[s] training file were made at or near the time reflected in the documents by persons with knowledge of the contents thereof. Consistent with

3

[Brands'] policy and practice, the documents maintained in Ramos'[s] training file were made and maintained in the regular course of [Brands'] business operations." Phillips's declaration does not specifically mention the Training Record.

C.    OPPOSITION

In opposing the motion, Ramos asserted, "[T]he Agreement attached to [Brands' motion] is completely blank, having no date, no timestamp, no signature, no initials, or any other indication it was executed. [Brands] have also attached an excel-type printout[, i.e., the Training Record,] which lists the Agreement as one of several dozen 'lessons' that Ms. Ramos supposedly completed. This printout is not credible as there is no signature, date, timestamp or anything establishing its accuracy."

Ramos continued, "There is no declarant or witness on behalf of . . . Brands who has attested to contemporaneous knowledge of Ms. Ramos being presented with, reviewing and executing the [arbitration] Agreement. Instead, [Brands] rely exclusively on Ms. Phillips attesting to having 'reviewed certain documents' in the personnel file of Ms. Ramos." "Likewise, while based on her 'review' Ms. Phillips claims that [Ramos] clicked [a] '[c]heck the box' icon [citation], the agreement presented by [Brands] has no box icons either. There is also no accompanying signature or other acknowledgement from [Brands] themselves."

Ramos asserted that she "is unequivocal in her attestation that she . . . did not agree to and did not execute the [arbitration] Agreement through SmileU in 2017 or at any other time." In a declaration, Ramos declared that she did not sign the arbitration agreement in 2017, and she would not have signed it had she seen it. Ramos declared

4

that she regularly checked the completed documents and courses list in SmileU, and she never saw an arbitration agreement listed there. Ramos declared that the Training Record, filed by Brands, included other errors. For example, the Training Record reflected Ramos completed courses on days she was not at work.

The opposition and Ramos's declaration were filed on June 10, 2021. The mailing label to serve the documents on Brands was created at 12:26 a.m. on June 10, 2021. The post office picked up the documents on June 11, 2021, at 2:24 p.m. The documents were delivered to Brands on June 12, 2021, at 12:37 p.m. The proof of service for the opposition and declaration reflect that, on June 9, 2021, the documents were served on Brands' attorney via email and express mail.

D.    REPLY

In Brands' reply, they asserted that they met their evidentiary "burden by producing both the Agreement and a declarant who provided a sworn declaration detailing how . . . Ramos used a personal username and individually created confidential password to log into SmileU. [Citation.] Further, [Brands are] not required to produce a witness with personal knowledge of [Ramos] *actually* signing the Agreement. Ms. Phillip's [*sic*] declaration is adequate for this purpose, regardless as to whether she has ever met [Ramos] or witnessed her logging-in and signing the Agreement." (Fns. omitted.)

Additionally, Brands asserted that Ramos's opposition "should be entirely disregarded for deficient service. Pursuant to Code of Civil Procedure section 1005(c), all opposition papers must be served by overnight mail or by another means to ensure

5

receipt of the opposition by the following business day." (Italics omitted.) Brands argued that it should have received the opposition and declaration by June 11, 2021, but it did not receive the documents until June 12, 2021. Brands denied receiving the documents via email. Brands contended it "was not provided with the statutory time to respond to [Ramos's] Opposition," and "[t]herefore, [Ramos's] Opposition should be disregarded by the Court and this Motion should be considered unopposed." Brands filed their reply on June 18, 2021.

E.      RULING

The trial court denied the motion. In its ruling the trial court explained that Phillips's "declaration does not establish that [Ramos] accessed, reviewed and electronically signed the Arbitration Agreement. [¶] The 'Mutual Arbitration Agreement' produced by Brands does not contain an actual 'electronic signature' of [Ramos]. [¶] Nowhere in the Arbitration Agreement is [Ramos] identified by name. [¶] Nor does the document contain an electronic signature bearing her name, or any date to show that it is the precise Arbitration Agreement reviewed or signed by [Ramos]."

The trial court continued, "There is no testimony from Ms. Phillips, or anyone else at [Brands] establishing how the 'Training Record' was generated. There is no indication of how the 'Training Record' was prepared, how [*sic*], or by whom. [¶] The evidence presented by [Brands] is insufficient to establish the existence of a valid arbitration agreement between [Ramos] and [Brands]." The trial court did not expressly address Brands' argument concerning untimely service of the opposition documents.

6

## DISCUSSION

A.     <u>LATE SERVICE</u>

Brands contend the trial court erred by finding that Ramos met her burden of proof because Ramos's "[o]pposition should have been disregarded in its entirety for deficient service" on Brands.  In particular, Brands assert that they did not receive Ramos's "Opposition and . . . Declarations until three days" after they were filed.

"[A]ll papers opposing a motion . . . shall be served by personal delivery, facsimile transmission, express mail, or other means . . . , and reasonably calculated to ensure delivery to the other party or parties not later than the close of the next business day after the time the opposing papers or reply papers, as applicable, are filed."  (Code Civ. Proc., § 1005, subd. (c).)

Ramos's opposition and declaration were filed on Thursday, June 10, 2021.[1] The documents were delivered to Brands on Saturday, June 12, 2021.  For the sake of addressing this argument, we will accept Brands' assertion that they also did not receive the documents via email by June 11, 2021.[2]  Thus, the documents were delivered one day late.

---

[1] We take judicial notice of the fact that June 10, 2021, was a Thursday.  (Evid. Code, § 452, subd. (h).)

[2] Ramos requests we take judicial notice of an email dated June 9, 2021, from her attorney to Brands' attorneys reflecting that the opposition and declarations were attached to the email.  Ramos contends we can take judicial notice of the email because it is a "[f]act[] [or] proposition[] that [is] not reasonably subject to dispute and [is] capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  (Evid. Code, § 452, subd. (h).)  Ramos fails to explain how a

*[footnote continued on next page]*

7

When the moving party's reply addresses the merits of a late-served opposition, then the moving party forfeits the issue of timeliness of the service. (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697; *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 13.) If the moving party believes the late-served opposition has prejudiced the moving party, then the moving party should "appear at the hearing without filing a [reply] to the [opposition] and request a continuance for the purpose of preparing a proper [reply]." (*Carlton*, at pp. 697-698.) Brands did not request a continuance. Instead, Brands filed a reply addressing the merits of Ramos's opposition. Accordingly, the trial court could properly treat Brands' improper service argument as forfeited.

B.    <u>SUBSTANTIAL EVIDENCE</u>

1.    *SHIFTING BURDENS OF PROOF*

When a party moves to compel arbitration, the party bears the burden of providing "prima facie evidence of a written agreement to arbitrate the controversy." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) The moving party "may meet [that] initial burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature" (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*)) or some other evidence of the opposing party's consent to arbitrate (Civ. Code, § 1633.9, subd. (a)).

---

contested email meets the criteria of Evidence Code section 452, subdivision (h), and it is not obvious to us. Accordingly, we deny Ramos's request for judicial notice.

8

If the opposing party challenges the evidence of her consent to arbitrate, then she bears the burden of demonstrating by a preponderance of the evidence that she did not consent. (*Espejo*, *supra*, 246 Cal.App.4th at p. 1057.) For example, the opposing party may provide a declaration reflecting that she did not consent to arbitration. (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 546 [opposing party relied on a declaration].) If the opposing party meets her burden, then the burden shifts back to the moving party "to establish by a preponderance of the evidence that [the evidence of consent] was authentic." (*Espejo*, *supra*, 246 Cal.App.4th at p. 1060.)

### 2. *BRANDS' PRIMA FACIE BURDEN*

Brands provided an arbitration agreement without a signature and without a checkmark, but Brands also provided a Training Record reflecting that Ramos's arbitration agreement was "[c]omplete." For the sake of argument, we will presume, without deciding, that such evidence satisfied Brands' prima facie burden.

### 3. *RAMOS'S BURDEN*

At that point, the burden shifted to Ramos. Brands contend that Ramos did not present sufficient evidence to establish a lack of consent because she primarily relied on "her self-serving declaration."

"The testimony of a single credible witness may constitute substantial evidence." (*Spencer v. Marshall* (2008) 168 Cal.App.4th 783, 793.) "The testimony of an interested party is competent and admissible [evidence]." (*Greshko v. County of Los Angeles* (1987) 194 Cal.App.3d 822, 835.) "Modern courts have recognized that all evidence proffered by a party is intended to be self-serving in the sense of supporting

9

the party's position, and it cannot be discounted on that basis." (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1050.) Thus, the fact that Ramos's declaration is self-serving is not a sufficient reason to find it lacks credibility.

In the declaration, Ramos explained that she typically reviews legal documents with her husband and one of her sons, who works in the legal field. In 2012, Brands gave Ramos an arbitration agreement, and she discussed the 2012 arbitration agreement with her husband and son prior to rejecting it. Ramos explained that she would have remembered if she saw the arbitration agreement in 2017 because she had rejected it in 2012 and therefore would have discussed it again with her husband and son. Ramos declared that the first time she saw the 2017 arbitration agreement was when her attorneys showed it to her as part of the instant litigation.

Ramos's declaration is not a conclusory, self-serving statement. Rather, the declaration includes an explanation as to why Ramos is able to credibly assert that she did not see nor sign the 2017 agreement. In sum, we are not persuaded that Ramos's evidence is insufficient. To the contrary, it is substantial evidence on which the trial court could reasonably rely.

4.     *BRANDS' BURDEN TO AUTHENTICATE THEIR EVIDENCE*

The burden shifted back to Brands to authenticate their evidence of Ramos's alleged consent. Brands assert their evidence was of such character and weight that the trial court had no choice but to conclude that Ramos consented to arbitration, and therefore the trial court erred by denying their motion.

When a party fails to meet its evidentiary burden in the trial court and appeals, " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.)

Brands presented the court with an arbitration agreement that lacked signatures or a checkmark. Brands failed to present evidence of who or what created the Training Record and how the Training Record was created or generated. As a result, the trial court could properly disregard the Training Record as unauthenticated. (Evid. Code, § 1401, subd. (a).) Further, Brands did not indicate why "[c]omplete" on the Training Record meant "consented," given that the arbitration agreement included an "opt-out" provision. Phillips's declaration failed to explain how she knew that Ramos consented to the arbitration agreement, as opposed to opting out. In sum, Brands' evidence was not of such character and weight that it compelled a finding in favor of Brands.

D.     REQUIRING A SIGNATURE

In the trial court's ruling it wrote, "The 'Mutual Arbitration Agreement' produced by [Brands] does not contain an actual 'electronic signature' of [Ramos]." Brands contend the trial court erred by requiring a signature.

"An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a

11

showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (Civ. Code, § 1633.9, subd. (a).)

Brands' assertion ignores the remainder of the trial court's reasoning. The trial court explained, "[T]he 'Training Record' that purports to show that [Ramos] allegedly completed the review and acceptance of the Arbitration Agreement on July 11, 2017, is insufficient to establish that [Ramos] actually reviewed and accepted the Agreement." The trial court's reasoning demonstrates that the court did not require a signature. Rather, it would have accepted other evidence of Ramos's alleged consent, if persuasive evidence of such had been presented. In sum, the trial court did not err.

## DISPOSITION

The trial court's denial of appellants' motion is affirmed. Respondent is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

FIELDS
J.

MENETREZ
J.

12