[No. B079717. Second Dist., Div. Three. Sept. 29, 1995.]

MATTCO FORGE, INC., et al., Plaintiffs and Respondents, v.
ARTHUR YOUNG & COMPANY et al., Defendants, Cross-complainants
and Appellants;
JAMES B. HELMER, JR., et al., Cross-defendants and Respondents.

1338

COUNSEL

Ernst & Young, Steven J. Miller, Cameron D. Coy and Gaelle H. Gralnek for Defendants, Cross-complainants and Appellants.

O'Neill, Lysaght & Sun, J. Joseph Connolly and John M. Moscarino for Plaintiffs and Respondents.

Charleston, Revich & Williams, Howard Wollitz and Fern S. Nisen for Cross-defendants and Respondents.

## OPINION

**KLEIN, P. J.**—Cross-complainants and appellants Arthur Young & Company, Richard E. Lamping, Thomas W. Blumer and Ernst & Young (collectively Young) appeal an order dismissing their cross-complaint against attorneys James B. Helmer, Jr., and Robert L. Neff, Jr. (Helmer & Neff), cross-defendants and respondents, pursuant to a "good faith" settlement.

The essential issue presented is whether the trial court abused its discretion in finding the subject settlement to be in good faith. (Code Civ. Proc., § 877.6.)[1]

Because no substantial evidence was presented regarding the settling party's proportionate liability, and for the additional reasons discussed below, the order is reversed.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The federal action.*

Mattco Forge, Inc., and Mateo Minguez (collectively Mattco) sued General Electric (G.E.) in federal court, claiming G.E.'s elimination of Mattco as an approved subcontractor was racially motivated. Helmer & Neff represented Mattco in that action. To help establish Mattco's damages, Young, an accounting firm, was retained as a consultant and expert witness.

On September 12, 1988, Judge Gadbois issued a sanctions order against Mattco. The judge found, inter alia, that Mattco, "in an attempt to fraudulently increase the damages they seek to claim in this action, altered and fabricated estimate sheets used to help calculate those damages. . . . [¶] It is undisputed that [Mattco] created these estimate sheets in November 1986 for the sole purpose of calculating their damages in this action. It is undisputed that they created them so that they would appear to be authentic, original business documents. It is undisputed that [Mattco] intended [G.E.] to believe the estimate sheets were original documents up until August 1987, when . . . Minguez testified at his deposition that the estimate sheets were fabricated." Minguez's testimony also disclosed he recreated missing estimate sheets and filled in information on incomplete estimate sheets at the request of a Young accountant, who asked Minguez to prepare estimates for those estimate sheets he was unable to locate.

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

As for the remedy for the document fabrication, on February 15, 1989, Judge Gadbois ordered Mattco to pay sanctions of $1.4 million within 45 days, or the matter would be dismissed with prejudice.

Instead of paying the sanctions, Mattco entered into a mutual release with G.E. and the case was dismissed with prejudice on or about March 28, 1989.

### 2. *The accountant malpractice action.*

In July 1989, Mattco brought an action in the superior court against Young, claiming Young was liable for the damages Mattco would have obtained from G.E. had the federal case proceeded to trial. Mattco alleged, inter alia, Young failed to take steps to designate the documents containing noncontemporaneous estimating information as noncontemporaneous documents.

### 3. *Young's cross-complaint against Helmer & Neff.*

Young filed a cross-complaint against Helmer & Neff, alleging fraud, complete indemnity and partial indemnity claims. Young alleged, inter alia, Helmer & Neff represented they would review the documents from Young before producing them to G.E. in discovery, and that they would not misrepresent to G.E. the nature or content of said documents. Further, any damage suffered by Mattco was the fault of Helmer & Neff, not Young, and Young's liability was merely vicarious or derivative.

Young also alleged causes of action for negligence and negligent misrepresentation.

The trial court sustained Helmer & Neff's demurrer with leave to amend with respect to the negligence-based claims.

On March 28, 1991, the trial court granted summary judgment for Young on Mattco's claims against it. Young voluntarily dismissed without prejudice its cross-complaint against Helmer & Neff. The grant of summary judgment obtained by Young was reversed on appeal and the matter was remanded to the trial court.

On remand, Young refiled its cross-complaint against Helmer & Neff and included in the complaint the claims for negligence and negligent misrepresentation. Helmer & Neff moved to strike the negligence-based claims on the ground their demurrer thereto previously had been sustained. The trial court granted the motion to strike, leaving Young's claims against Helmer & Neff for fraud, complete indemnity and partial indemnity.

### 4. *Dismissal of Young's cross-complaint against Helmer & Neff pursuant to the "good faith" settlement.*

In September 1993, Helmer & Neff entered into a settlement with Mattco although Mattco had never sued them and any claims Mattco might have had against Helmer & Neff arising out of the federal action apparently were time barred.[2]

The sliding-scale settlement agreement, calling for delivery of a $150,000 draft and up to an additional $600,000, provides Helmer & Neff will guarantee Mattco a recovery of at least $750,000 on its claims against Young. If Mattco recovers more than $750,000 against Young, Helmer & Neff would pay nothing to Mattco. Further, if Mattco enters into any subsequent settlement or stipulated judgment with Young, Helmer & Neff will pay nothing to Mattco. The agreement recited the present value of the guarantee was $250,000.

Helmer & Neff moved for an order finding the settlement to be in good faith so as to bar Young's cross-complaint against them. The motion was supported by the declaration of Attorney Howard Wollitz. Wollitz set forth the procedural history of the matter and summarized the terms of the settlement agreement.

Young opposed the motion, arguing: the settlement was the product of collusion aimed at injuring its interests, and the amount of the proposed settlement was grossly disproportionate to Helmer & Neff's relative liability. Although the attorneys' relative culpability was significant, Mattco proposed to settle with them for a guarantee worth $250,000. However, Mattco demanded at least $5 million to settle its claims against Young.

Young's opposition papers also included the expert declaration of attorney Marshall Grossman. Grossman opined Helmer & Neff failed to comply with the professional standards of an attorney at law by, inter alia, failing to recognize and respect the distinction between Young's role as a consultant and as a testifying expert in the federal action, failing to direct and supervise

---

[2]Unless there is a tolling due to continuing representation of the client by the attorney or for other reasons, an action against an attorney for malpractice "shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (§ 340.6, subd. (a).) The federal action was dismissed on or about March 28, 1989. Mattco and Helmer & Neff entered into the subject settlement in September 1993, some four and one-half years later. Helmer & Neff do not dispute Young's contention that any malpractice action by Mattco against Helmer & Neff was time barred by the date Mattco and Helmer & Neff entered into the subject settlement.

Young's work in that action, improperly representing to the court the nature of the work undertaken by Young and the testimony Young would provide on the issue of damages.

Helmer & Neff's reply papers included the expert declaration of attorney Edward A. Woods, who disputed Grossman's conclusion that Helmer & Neff breached the standard of care.

The matter was heard on October 5, 1993. The trial court stated to Young's counsel: "It's your position that your clients did nothing wrong, that there is no liability. [Young's] $2,500 [section] 998 offer is an insult and so is [its] $55,000 offer in this situation and I just can't see how you can take both positions and say that this agreement is not in good faith when you have urged that your client has no liability at all."

Young's counsel responded: "That's correct. But if there is a judgment entered against my clients, it is our position that it is a direct result of the liability caused by the cross-defendant attorneys because they are the ones who are at fault in this action and that's the reason why it is not in proportion with their respective liability in this case."

Young's counsel further objected on the ground "[t]hey are getting out for $750,000, plus offset by any offset by us. If there is a $30 million dollar judgment against our client, they get out for zero, and they are the more culpable party."

The trial court responded: "That is why they are buying their peace. That is what the law encourages. That is what *Tech-Bilt* is saying. That is why we have sliding scale and Mary Carter and all of this esoteric stuff . . . ."[3, 4]

The trial court then approved the settlement, findng it was in good faith, and dismissed Young's cross-complaint against Helmer & Neff for complete and partial indemnity. The trial court also disposed of Young's fraud claim on the ground it was, in effect, a claim for indemnity. The dismissal eliminated all of Young's claims against Helmer & Neff. Young appealed.

## CONTENTIONS

Young contends: Helmer & Neff's settlement with Mattco lacks good faith; even if the settlement were made in good faith, Young's direct claim

---

[3] *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159].

[4] The term "Mary Carter" agreement is derived from the name of one of the earliest cases involving such an agreement, *Booth* v. *Mary Carter Paint Company* (Fla.Dist.Ct.App. 1967) 202 So.2d 8. (*Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 869, fn. 9 [239 Cal.Rptr. 626, 741 P.2d 124].)

of fraud could not be barred; and, Young adequately alleged its negligence-based claims.

## DISCUSSION

1. *Helmer & Neff, although not included as a defendant in the Mattco/Young action, were authorized to bring a motion for determination of good faith settlement.*

A threshold issue is whether Helmer & Neff were authorized to bring a motion to determine the good faith of its settlement with Mattco even though Mattco did not sue Helmer & Neff and Helmer & Neff solely were cross-defendants on Young's cross-complaint.

Section 877.6, subdivision (a)(1), states any party to an action *"wherein it is alleged that two or more parties are joint tortfeasors"* shall be entitled to a hearing on the issue of the good faith of a settlement. (Italics added.) Mattco did not sue Helmer & Neff and Mattco's complaint against Young did not allege Helmer & Neff and Young were joint tortfeasors. However, Young's *cross-complaint* alleged any damage to Mattco was caused, in whole or in part, by Helmer & Neff's negligence or other fault. Because Helmer & Neff were brought into the action by way of Young's cross-complaint, which alleged Helmer & Neff were joint tortfeasors, Helmer & Neff were entitled to request a judicial determination that the subject settlement was in good faith pursuant to section 877.6.

*Widson* v. *International Harvester Co.* (1984) 153 Cal.App.3d 45 [200 Cal.Rptr. 136] (hg. den.) is directly on point. The plaintiff, Widson, was injured in a jobsite accident when an earth-moving machine manufactured and owned by Harvester backed over him. Louetto was the general contractor. Widson sued Harvester, which filed a cross-complaint against Louetto for equitable indemnity. (*Id.,* at p. 49.) Widson and Louetto entered into a good faith settlement, even though Widson had no viable claim against Louetto because the applicable three-year period for service of summons had expired. (*Id.,* at pp. 49, 57-58.)

Rejecting Harvester's challenge to the settlement, *Widson* held sections 877 and 877.6 apply even "where the settling tortfeasor is merely a cross-defendant in an action for comparative or partial equitable indemnity and is not a defendant in the main action itself." (*Widson* v. *International Harvester Co., supra,* 153 Cal.App.3d at p. 57.) *Widson* observed the policy of the law "is to discourage litigation and favor compromises" and it concluded the statutory scheme applies "regardless of who makes the claim, whether it be

the plaintiff directly, the defendant or third party by way of cross-complaint." (*Ibid.*)

Further, the fact Widson had no viable cause of action against Louetto did not preclude a good faith settlement between Widson and Louetto. The court reasoned: "It would be unreasonable to hold that because Louetto was not a defendant it lost its ability to resolve its exposure to the plaintiff." (*Widson v. International Harvester Co., supra,* 153 Cal.App.3d at p. 58.)

Accordingly, Helmer & Neff were entitled to seek a determination of good faith settlement, even though they had not been sued by Mattco and were solely cross-defendants in the action. Further, in view of *Widson,* the fact a malpractice claim by Mattco against Helmer & Neff arising out of Helmer & Neff's handling of the federal action would have been time-barred did not preclude Helmer & Neff from seeking a good faith settlement with Mattco.

### 2. *General principles re good faith settlements.*

#### a. *Relevant statutes.*

The statutes which govern this case are sections 877 and 877.6. Section 877 provides: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, . . . it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater. [¶] (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties."

Section 877.6 states in pertinent part: "(a)(1) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . . [¶] . . . [¶] (b) *The issue of the good faith of a settlement may be determined by the court on the basis of affidavits* served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing. [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault. [¶]

(d) *The party asserting the lack of good faith shall have the burden of proof on that issue.*" (Italics added.)

This legislation has two objectives: equitable sharing of costs among the parties at fault and encouragement of settlements. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 494.)

### b. *Determination of good faith.*

The determination as to whether a settlement is in good faith is a matter left to the discretion of the trial court. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 502.)

The factors to be taken into account in the determination of whether a settlement is in "good faith" include: a rough approximation of plaintiff's total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than if found liable after a trial. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499.) Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud or tortious conduct aimed at injuring the interests of nonsettling defendants. (*Ibid.*) Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement. (*Ibid.*) " '[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.' [Citation.]" (*Ibid.*)

Section 877.6 "contemplates that the determination of good faith may be made by the court on the basis of affidavits . . . and . . . '[t]he price levels are not as unpredictable as one might suppose. Despite the uncertainties, generalized valuation criteria are recognized by the personal injury bar, insurance claims departments and pretrial settlement courts. When testing the good faith of a settlement figure, a court may enlist the guidance of the judge's personal experience and of experts in the field. Represented by knowledgeable counsel, settlement negotiators can predict with some assurance whether a settlement is within the reasonable range permitted by the criterion of good faith." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 500.)

3. *Trial court abused its discretion in finding subject settlement was in good faith.*

a. *No substantial evidence that settlement was proportionate to Helmer & Neff's liability.*

Preliminarily, giving the guarantee a value of $250,000, which is the figure set forth in the settlement agreement, and estimating Mattco's damages at $39 million, the figure used in Helmer & Neff's moving papers, Helmer & Neff settled with Mattco for *less than 1 percent* of Mattco's damages.[5]

"A determination as to the good faith of a settlement, within the meaning of section 877.6, necessarily requires the trial court to examine and weigh a number of relevant factors, *one of the most important of which is the settling party's proportionate liability.*" (*Toyota Motor Sales U.S.A., Inc.* v. *Superior Court* (1990) 220 Cal.App.3d 864, 871 [269 Cal.Rptr. 647], italics added, fn. omitted.) If "*there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability*, then a determination of good faith based upon such assumption is an abuse of discretion." (*Ibid.*, italics added.)

Here, Helmer & Neff did not proffer any *evidence* regarding their proportionate liability for Mattco's alleged injury, either in their moving or reply papers.[6] Helmer & Neff merely presented a series of questionable assumptions in their memorandum of points and authorities to show the settlement amount was reasonable.

Helmer & Neff argued: Mattco's total recovery in the underlying action would have been $39 million. Assuming Mattco had only a 50/50 chance of prevailing against G.E., its damages would have been about $20 million. Assuming Mattco were 50 percent at fault for the events giving rise to the

---

[5]While recognizing the good faith evaluation must be made on the basis of information available at the time of settlement (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499), Helmer & Neff's $39 million estimate of Mattco's damages was borne out by the $42 million verdict Mattco subsequently obtained against Young. (Evid. Code, § 452, subd. (d); see *North County Contractor's Assn.* v. *Touchstone Ins. Services* (1994) 27 Cal.App.4th 1085, 1095, fn. 5 [33 Cal.Rptr.2d 166].)

[6]We recognize the party asserting the lack of good faith has the burden of proof on that issue. (§ 877.6, subd. (d).) Therefore, in bringing the motion for good faith settlement, Helmer & Neff were not compelled to make a showing as to their proportionate liability. However, after Young attacked the settlement as lacking in good faith, Helmer & Neff were required to file counteraffidavits (§ 877.6, subd. (b)) to make an evidentiary showing that the settlement was "in the ballpark." In the absence of such a showing by Helmer & Neff, as the parties seeking approval of the good faith settlement, there is "no substantial evidence to support a critical assumption as to the nature and extent of [the] settling [parties'] liability[.]" (*Toyota Motor Sales U.S.A., Inc., supra,* 220 Cal.App.3d at p. 871.)

dismissal of the underlying action, its damages would have been $10 million. Further assuming Helmer & Neff's share of fault in the production of the noncontemporaneous documents was not more than 5 or 10 percent, the settling attorneys' share of the damages should not exceed $500,000 to $1 million. Therefore, the settlement was within the reasonable range or "ballpark" of their share of liability for Mattco's injuries.

This argument, *unsupported by affidavits*, does not begin to support Helmer & Neff's claim the settlement was within the ballpark of their proportionate liability. As indicated, Helmer & Neff filed a declaration by Woods to rebut Grossman's conclusions regarding Helmer & Neff's negligence. Section 877.6 and *Tech-Bilt* require an evidentiary showing, through expert declarations or other means, that the proposed settlement is within the reasonable range permitted by the criterion of good faith. (§ 877.6, subd. (b); *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra*, 38 Cal.3d at p. 500.) In view of the absence of any substantial evidence to show the $250,000 value of the guarantee was within the reasonable range of Helmer & Neff's proportionate liability, Young met its burden in attacking the settlement as lacking in good faith. (§ 877.6, subd. (d); *Toyota Motor Sales U.S.A., Inc.* v. *Superior Court, supra*, 220 Cal.App.3d at p. 871.)[7]

The trial court on the record acknowledged its unfamiliarity with good faith settlement principles. The transcript of the good faith hearing does not indicate any scrutiny of whether Helmer & Neff's settlement with Mattco was within the reasonable range of their liability, except that the trial court appeared to concur in Young's position that Helmer & Neff were "the more culpable party." In that regard, the trial court observed "That is why they are buying their peace. That is what the law encourages."

Although the trial court appeared to accept Young's argument that the primary fault rested with Helmer & Neff, the trial court's focus was not on the issue of the proportionate liability of the parties. Instead, the trial court solely based its good faith ruling on Young's unwillingness to offer more than $57,500 to Mattco. It stated: "It is obvious to me that your clients are not going to settle this case, you are not going to make any meaningful offer, . . . and you have taken the position there is no liability, and it seems to me, therefore, this settlement looks like it is in good faith, at least to that extent. It looks to me like it is in good faith because the plaintiffs are getting $750,000 when you offered them $57,500 . . . ." When Young's counsel objected the settlement was not within the "ball park" of Helmer & Neff's

---

[7]Helmer & Neff's argument on appeal that their proportionate share of fault was zero is meritless. As indicated, Helmer & Neff's motion in the trial court assumed their share of fault was up to 10 percent. Moreover, in approving the settlement, the trial court did not find Helmer & Neff were without fault.

potential exposure, the trial court responded "It doesn't matter because you are not going to settle."

*Abbott Ford* held ". . . it is appropriate for a trial court to take into consideration the conduct of the nonsettling defendant in determining whether a sliding scale agreement is a good faith settlement . . . . [Fn. omitted.] [¶] At the same time, however, . . . *there must properly be limits on the consequences that may be visited on a defendant who is found to have been unreasonably recalcitrant in settlement negotiations.*" (*Abbott Ford, Inc.* v. *Superior Court, supra,* 43 Cal.3d at p. 881, italics added.) Thus, if the trial court finds a nonsettling party unreasonably impeded settlement, ". . . it may reduce the lower threshold of the 'ballpark' cutoff, and find a settlement in good faith even if the 'consideration' paid for, i.e., the 'value' of, the sliding scale agreement is somewhat lower than the court would otherwise have found acceptable." (43 Cal.3d at p. 882.)

Here, the trial court erred as a matter of law in basing its decision entirely on Young's refusal to settle with Mattco. The mere fact of Young's denial of liability and its refusal to settle with Mattco did not establish that Helmer & Neff's settlement with Mattco was anywhere within the reasonable range of Helmer & Neff's liability.

█ In sum, because there is no substantial evidence the subject settlement is in the ballpark of Helmer & Neff's proportionate liability, the trial court abused its discretion in approving the good faith settlement. (*Toyota Motor Sales U.S.A., Inc.* v. *Superior Court, supra,* 220 Cal.App.3d at p. 871.)

b. *Relatively modest settlement not warranted by Helmer & Neff's financial condition and insurance policy limits.*

█ As indicated, other relevant considerations under *Tech-Bilt* include the settling party's financial condition and insurance policy limits. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499.)

Here, according to the moving papers, Helmer & Neff had malpractice insurance with a $2 million limit of liability. Attorney fees, costs and expert witness fees had reduced the available limits to something less than $1.8 million. Thus, the guarantee, with a present value of $250,000, represented a mere 14 percent of the available policy limits.

We note " 'even where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor.' [Citation.]" (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499; accord, *County of Los Angeles* v. *Guerrero* (1989) 209 Cal.App.3d 1149, 1156-1157 [257 Cal.Rptr. 787].)

This is not such a case. Given the substantial insurance policy limits which were available here, Helmer & Neff's settlement with Mattco for $250,000, or less than 1 percent of Mattco's estimated damages, is not justified by their financial condition.

    c.   *Settlement was aimed at injuring Young's interest by cutting off its cross-complaint against Helmer & Neff.*

■   Another relevant consideration is "the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra*, 38 Cal.3d at p. 499.) The good faith provision of section 877 "mandates that the courts review agreements purportedly made under its aegis to insure that such settlements appropriately balance the contribution statute's dual objectives. [Fn. omitted.] 'Lack of good faith encompasses many kinds of behavior. It may characterize one or both sides to a settlement. When profit is involved, the ingenuity of man spawns limitless varieties of unfairness. . . .' " (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra*, 38 Cal.3d at pp. 494-495.)

Here, the record discloses Helmer & Neff, the settling parties, apparently had *no* legal liability toward Mattco as of the date of the good faith settlement. Surprisingly, Mattco never filed a malpractice action against Helmer & Neff for their handling of the federal action, even though Mattco had sued Young for its conduct therein. Further, by the time Mattco and Helmer & Neff entered into the subject settlement, the time for Mattco to file a legal malpractice action apparently had expired. (§ 340.6.) At the time the parties entered into the settlement in September 1993, some four and one-half years had elapsed since the dismissal of the federal action.

Given this state of affairs, Helmer & Neff admit their express reason for entering into the settlement with Mattco was to cut off Young's cross-complaint against them for indemnity. Said motivation was openly proclaimed in the settlement agreement, which stated that by entering into the good faith settlement, "[Helmer & Neff] will eliminate the uncertainty arising from the continued defense of the cross-complaint."

Mattco, in turn, stood to receive monies which it otherwise could not have received by virtue of any claim by Mattco against Helmer & Neff being time-barred.

In view of the fact Helmer & Neff settled with Mattco for less than 1 percent of Mattco's claimed damages, despite the availability to Helmer & Neff of substantial insurance policy limits, compounded by the fact the "settlement" was made even though Mattco no longer had a viable claim against Helmer & Neff, we are compelled to conclude the settlement was not in good faith and was aimed at injuring Young's interests.

We do not hold that a settlement necessarily lacks good faith merely because a party settles with a plaintiff even though the plaintiff has no viable claim against said party. ██ A plaintiff and a cross-defendant may enter into a good faith settlement, even if the plaintiff's claims against the cross-defendant are time-barred. (*Widson* v. *International Harvester Co.,* *supra*, 153 Cal.App.3d at pp. 57-58.) However, in such a situation, the proffered good faith settlement must be subjected to particular scrutiny to ensure the settlement amount is reasonable and that there is no collusion aimed at injuring the interests of the nonsettling cross-complainant.

If a cross-defendant without legal liability to the plaintiff settles with the plaintiff in an amount *within the reasonable range* of what the cross-defendant's liability would be, the interests of the nonsettling cross-complainant are protected, and both the policies of encouraging settlements and equitable financial sharing are served. However, when such a cross-defendant enters into a disproportionately low settlement with the plaintiff solely to obtain immunity from the cross-complaint, the inference that the settlement was not made in good faith is difficult to avoid.

### d. *The settlement improperly encouraged continued litigation.*

██ The settlement provided: "Nothing in this agreement shall obligate [Mattco] to pursue [its] claims against [Young]. However, if [Mattco] enter[s] into a settlement or stipulated judgment with [Young]: [¶] a. [Helmer & Neff] shall not be obligated to pay to [Mattco] any further portion of the guarantee sum; and [¶] b. [Mattco] shall, within 30 days, repay to [Helmer & Neff] the $150,000 paid to [Mattco] . . . , without interest."

As defined in section 877.5, subdivision (b), a sliding scale agreement "limits the liability of the agreeing tortfeasor defendants to an amount which is dependent upon the amount of recovery which the plaintiff is able to recover from the nonagreeing defendant or defendants." Here, however, the sliding scale agreement went so far as to compel Mattco to continue litigating the action against Young in order to receive any compensation whatsoever from Helmer & Neff.

Where a "settling defendant has agreed to guarantee that the plaintiff ultimately recovers some minimum amount, it 'has an obvious and legitimate interest in ensuring that the plaintiff diligently prosecutes its claims against the remaining defendants.' [Citation.] . . . While it may be reasonable for the earlier settling defendant to reserve the right to veto subsequent settlements which are unfairly low and which would result in its bearing an ultimate out-of-pocket cost higher than its fair share of the plaintiff's damages, there is no similar compelling justification for permitting that

defendant to bar the remaining defendants from settling with the plaintiff for an amount that is sufficiently high that it would not have such an unfair effect. [Citation.] An open-ended veto provision conflicts with the public policy which favors the full settlement of litigation and may frequently result in unnecessary trials. Accordingly, . . . to be valid and enforceable, such a veto provision must, by its terms, be confined only to those subsequent settlements that will require the earlier settling defendant to bear more than its fair 'ballpark' share of damages. [Fn. omitted.]" (*Abbott Ford, Inc.*v. *Superior Court, supra,* 43 Cal.3d at p. 883.)

By withdrawing any moneys in the event Mattco settled with Young, the instant agreement would deter any settlement between Mattco and Young. Because the subject provision effectively precluded Mattco from entering into any settlement or stipulated judgment with Young, even a settlement which would not result in Helmer & Neff's bearing an unfair share of Mattco's damages, the provision was invalid.

In view of all the above, the trial court abused its discretion in approving the subject settlement as being in good faith.

4. *Trial court erred in dismissing Young's fraud claim.*

As indicated, upon finding the settlement was in good faith, the trial court also dismissed Young's cause of action for fraud on the ground it was merely a disguised indemnity claim. (*Cal-Jones Properties* v. *Evans Pacific Corp.* (1989) 216 Cal.App.3d 324, 329 [264 Cal.Rptr. 737].) Young contends the ruling was error.

As discussed above, because the subject settlement failed to comply with good faith standards, the trial court erred in dismissing Young's cross-complaint for indemnity. Accordingly, it necessarily follows the trial court also erred in dismissing the fraud claim pursuant to the good faith settlement.

5. *Trial court properly dismissed Young's negligence-based claims against Helmer & Neff because no duty was owed.*

The trial court granted Helmer & Neff's motion to strike Young's causes of action for negligence and negligent misrepresentation on the ground they previously had sustained demurrers to those causes of action.

The issue presented is whether Helmer & Neff owed Young a duty of care, even though Helmer & Neff represented Mattco, not Young.

In *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 648-651 [320 P.2d 16, 65 A.L.R.2d 1358], a notary public was held liable to the intended beneficiary

of a will which was ineffective because of the notary's negligent failure to have it properly attested.

*Biakanja* overruled *Buckley* v. *Gray* (1895) 110 Cal. 339 [42 P. 900], which held that lack of privity of contract precluded an attorney's liability to an intended beneficiary for negligence in drafting a will and directing its execution. (*Biakanja, supra,* 49 Cal.2d at p. 651.) Rejecting the requirement of privity, *Biakanja* held: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Id.,* at p. 650.)

In *Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 588-589 [15 Cal.Rptr. 821, 364 P.2d 685], these factors were applied in holding an attorney's duty of care in drafting a will extends to the intended beneficiary.

In *Held* v. *Arant* (1977) 67 Cal.App.3d 748, 750 [134 Cal.Rptr. 422], an attorney who was sued by a former client for professional negligence filed a cross-complaint for indemnity against the attorney subsequently retained by the suing client on the theory the second lawyer's negligence aggravated the initial loss. The cross-complaining attorney contended an attorney is liable for his negligence to anyone who foreseeably may be damaged by it. (*Id.,* at p. 751.) *Held* rejected the argument, stating that despite the lack of a requirement of privity, "The lawyer's duty of care extends only to the intended beneficiaries of his action. [Citations.]" (*Ibid.*) Counsel was not an intended beneficiary of the subsequent attorney's representation of the client. (*Ibid.*)

Here, Young was not an entity "upon [which Helmer & Neff's client] had any wish or obligation to confer a benefit in the transaction." (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 344 [134 Cal.Rptr. 375, 556 P.2d 737].) The intended beneficiary of Helmer & Neff's representation was *Mattco.* Therefore, Helmer & Neff did not owe Young a duty of care.

As *Goodman* reasoned, to impose a broad duty running from counsel to third parties "would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal 'would prevent him from

devoting his entire energies to his client's interests' [citation]. The result would be both 'an undue burden on the profession' [citation] and a diminution in the quality of the legal services received by the client. [Fn. omitted.]" (*Goodman* v. *Kennedy, supra,* 18 Cal.3d at p. 344.)

*Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 110-111 [128 Cal.Rptr. 901], invoked by Young, is inapposite. There, a law firm gave a client a written opinion with the intention it be transmitted to and relied upon by the plaintiff in extending credit to the client. In that situation, the attorneys owed the plaintiff a duty of care in providing the advice because the plaintiff's anticipated reliance upon it was " 'the *end and aim of the transaction.*' " (*Goodman* v. *Kennedy, supra,* 18 Cal.3d at p. 343, fn. 4, italics added.) Therefore, the plaintiff was able to allege a cause of action against counsel for negligent misrepresentation. (*Roberts, supra,* at p. 111.)

Here, Young's reliance on Helmer & Neff's representations was not the end aim of the transaction. The end aim was a favorable resolution of the Mattco/G.E. lawsuit. Accordingly, *Roberts* is unavailing to Young.

In sum, the trial court properly struck Young's negligence-based claims against Helmer & Neff.

## DISPOSITION

The order of dismissal is reversed and the matter is remanded to the trial court with directions to deny Helmer & Neff's motion for good faith settlement and to reinstate Young's cross-complaint against Helmer & Neff, including the cause of action for fraud. This reversal is without prejudice to the parties renegotiating the settlement in light of this decision and in compliance with the standards set forth in *Tech-Bilt.* (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 500, fn. 8.)

Young to recover costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied October 26, 1995, and the opinion was modified to read as printed above. The petition of cross-defendants and respondents for review by the Supreme Court was denied January 31, 1996.