Filed 7/19/24  Shabani v. Regions Bank CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JOSEPH SHABANI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>REGIONS BANK,<br><br>    Defendant and Respondent;<br><br>CAL BURTON, as Trustee, etc.,<br><br>    Defendant and Appellant. | B324217<br><br>Los Angeles County<br>Super. Ct. No. BC696195 |

APPEAL from an order of the Superior Court of Los Angeles County, Christopher K. Lui, Judge. Affirmed.

Collins + Collins and James C. Jardin for Defendant and Appellant.

Law Offices of Saul Reiss, Saul Reiss, and Faye Pugh for Plaintiff and Respondent.

Sacks, Glazier, Franklin, & Lodise, Terrence M. Franklin, and Antonieta Pimienta Lefebvre for Defendant and Respondent.

---

## INTRODUCTION

This appeal arises from the trial court's approval of a settlement agreement between plaintiff and respondent Joseph Shabani and defendant and respondent Regions Bank. The Bank, acting as a trustee, agreed to sell certain trust assets to plaintiff. The sale was obstructed by the beneficiary of the trust and protracted litigation ensued in this case and in a parallel probate proceeding. The Bank resigned as trustee and was replaced by defendant and appellant Cal Burton, who refuses to complete the sale. Plaintiff sued Cal Burton for breach of the asset purchase agreement and related claims and sued the Bank for fraudulent misrepresentation.

Plaintiff's claims against the Bank are barred as a matter of law. In the interest of halting further litigation, the Bank settled with plaintiff for $150,000 in exchange for a release of all claims against it. The court approved the settlement under Code of Civil Procedure section 877.6.[1] Finding no error, we affirm.

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

# FACTS AND PROCEDURAL BACKGROUND

## 1.    The Trust

In 1998, Julius Burton, Sr. and Christopher Burton created a trust and transferred to it, as relevant here, several pieces of real property located on Crenshaw Boulevard in Los Angeles (Crenshaw properties). The sole beneficiary of the trust is the trustors' son, Julius Burton, Jr. (beneficiary). The surviving trustor died in 2006 and at that time the trust owned no liquid assets or cash accounts.

In May 2007, the Bank became the trustee of the trust. The trust was insolvent and burdened with substantial federal estate tax liability.

## 2.    The Purchase Agreement

In July 2013, the Bank agreed to sell the Crenshaw properties to plaintiff for $775,000 as documented in a purchase agreement. The purchase price was later reduced to $685,000. The parties agreed that escrow would close 45 days after the date of the purchase agreement, in early September 2013. The parties agreed to extend the date several times during 2013 and 2014. Plaintiff fully performed under the agreement by depositing funds into escrow and removing contingencies as required.

## 3.    Obstacles to Sale of the Crenshaw Properties

In 2010, the beneficiary filed a petition in probate court to remove the Bank as trustee under Probate Code section 17200. Extensive litigation ensued. The court conducted a trial on the petition and other pending issues and, in October 2013, terminated the trust noting that "[t]here are substantial outstanding tax liabilities."

3

Approximately six months later, in April 2014, the Bank filed a petition to instruct the trustees regarding the sale of the trust's property. The petition explained that the estate's federal tax liability, including interest, then exceeded $817,000. Further, the Bank represented that it had obtained a commitment from the Internal Revenue Service to settle that debt for $280,000, to be paid no later than April 18, 2014. The Bank requested authority to sell the Crenshaw properties to plaintiff for $685,000 to satisfy the debt.

The Bank did not complete the transaction by the deadline, due in part to ongoing negotiations with the Internal Revenue Service regarding liens on the properties for estate tax liability and attempts by the beneficiary, in parallel probate proceedings, to prevent the sale of the properties.

In May 2018, pursuant to a settlement agreement between the Bank and the beneficiary, the parties stipulated to and the court approved the appointment of Cal Burton as successor trustee of the trust. It is undisputed that Cal Burton has refused to proceed with the sale of the Crenshaw properties to plaintiff.

## 4. Complaint

In 2018, plaintiff filed the present action against the Bank and Cal Burton relating to the unconsummated purchase of the Crenshaw properties. As to Cal Burton, the complaint states causes of action for breach of contract (the purchase agreement), breach of the implied covenant of good faith and fair dealing, and specific performance. As to Regions Bank, the complaint states causes of action for intentional misrepresentation, promissory fraud, negligent misrepresentation, and declaratory relief. Plaintiff also alleges that each of the defendants acted as an

4

agent, employee, servant, partner, guarantor, or successor of the other defendants.

**5.  Summary Adjudication of Contract Claims Against Cal Burton**

In July 2019, the court summarily adjudicated plaintiff's claims against Cal Burton. The court found the undisputed material facts established that Cal Burton breached the purchase agreement and the covenant of good faith and fair dealing by refusing to sell the Crenshaw properties to plaintiff. The court ordered specific performance of the purchase agreement.

**6.  Settlement Between Plaintiff and the Bank**

In June 2022, plaintiff and the Bank executed a settlement agreement. As pertinent here, the Bank agreed to pay plaintiff $150,000 in exchange for plaintiff's agreement to dismiss with prejudice all of his claims against the Bank.

The Bank filed an application for a determination of good faith settlement under section 877.6. The Bank asserted that the $150,000 settlement amount is generous because plaintiff admitted that no fraud had occurred and, further, plaintiff's fraud claims were barred as a matter of law. Specifically, and as pertinent here, the Bank argued that the economic loss rule precluded plaintiff from recovering damages from the Bank on his fraud claims because plaintiff did not suffer any damages beyond those caused by the breach of the purchase agreement. In support of its application, the Bank submitted discovery responses from plaintiff stating that his only damages for fraud relate to the loss of income from the properties during the time the sale of the properties was delayed.

Cal Burton opposed the application. He argued that section 877.6 does not apply because he and the Bank are neither joint tortfeasors nor are they co-obligors on a contractual obligation. In addition, Cal Burton asserted the Bank failed to offer any evidence that its $150,000 settlement was within the "ballpark" of what plaintiff could expect to recover from it if the matter proceeded to trial. He claimed, further, that it was improper for the Bank to argue that it would not be liable to plaintiff, thereby rendering *any* settlement payment "in the ballpark." As to the economic loss doctrine, Cal Burton noted that the doctrine does not bar recovery of damages relating to fraud insofar as those damages are different from the damages resulting from a breach of contract. But he did not identify any damages claimed by plaintiff aside from the damages resulting from the breach of the purchase agreement. Finally, Cal Burton urged the court, if it was inclined to find against him, to grant a continuance to allow further (but unidentified) discovery.

Cal Burton submitted several declarations in support of his opposition.[2] The first, by his attorney, described attempted settlement discussions with plaintiff. Next, the beneficiary submitted a declaration describing, among other things, his failed attempt to obtain a loan against the Crenshaw properties, the proceeds of which he hoped to use to satisfy the estate's tax liability. A tenant leasing space at the Crenshaw properties also provided a declaration describing his relationship with one of the trustors and an interaction with plaintiff. Finally, Cal Burton

---

[2] The court sustained numerous evidentiary objections to the declarations including but not limited to relevance. We describe the content of the declarations generally but do not rely on any evidence excluded by the court.

provided a declaration discussing the beneficiary's attempt to obtain a loan against the Crenshaw properties, his attempts to satisfy the federal tax lien, and his opinion that the sale of the Crenshaw properties to plaintiff would not be in the interest of the trust because the properties were then worth nearly $3 million, far more than the agreed-upon sale price of $685,000.

In reply, the Bank noted it was Cal Burton's burden to establish that the settlement was not made in good faith and he failed to do so. The Bank noted, again, that it had strong legal defenses against plaintiff's claims. For that reason, the Bank argued, its settlement with plaintiff was more than reasonable. The Bank also opposed the request for a continuance, noting that the litigation had been pending at that point for more than four years, giving both sides ample opportunity to conduct and complete discovery.

### 7. The Order Approving the Settlement; Appeal

The court granted the Bank's application and approved the settlement.

As an initial matter, the court found that section 877.6 applied. Specifically, the court determined that the Bank and Cal Burton were joint tortfeasors because the complaint alleged that each defendant acted as the others' agent. Thus, although the causes of action asserted against Cal Burton were contractual, he could also be found liable for the Bank's tortious conduct, if any.

As to the settlement, the court found the settlement was made in good faith. More particularly, the court stated that the $150,000 settlement amount was not facially unreasonable, particularly in light of the litigation risks plaintiff faced with respect to the fraud claims. The court also noted that the

evidence submitted by Cal Burton in support of his opposition to the motion did not suggest an absence of good faith. Finally, the court rejected the request for a continuance, noting that the case had been filed nearly four and a half years earlier.

The court issued its order on August 25, 2022. Cal Burton timely appeals.[3]

## DISCUSSION

Cal Burton argues that the court erred by approving the settlement for two reasons. Procedurally, he contends section 877.6 does not apply. Substantively, he contends the order approving the settlement is not supported by substantial evidence. We reject both arguments.

### 1.    Code of Civil Procedure section 877.6 applies.

We first consider whether, as the trial court found, the settlement approval mechanism provided by section 877.6 applies here. Because the essential facts are undisputed, we review the court's finding de novo. (See, e.g., *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912 [noting "the application of law to undisputed facts ordinarily presents a legal question that is reviewed de novo"]; *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 633 [same].)

Section 877.6 applies in "an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a

---

[3] There is a split of authority regarding whether an order granting a motion for good faith settlement is appealable or may be challenged only in an original proceeding. Cal Burton filed a petition for writ of mandate challenging the court's order approving the settlement, which we summarily denied. We elect to hear this appeal on the merits so as not to insulate the court's decision from review.

contract debt" and the plaintiff enters into a settlement with "one or more alleged tortfeasors or co-obligors[.]" (§ 877.6, subd. (a)(1).) The court found, based on the allegations of the complaint, that Cal Burton and the Bank are alleged to be joint tortfeasors. Cal Burton claims they are not.

It is true, as Cal Burton notes, that the causes of action against him are based on an alleged breach of contract while the causes of action asserted against the Bank sound in tort. As discussed *ante*, the complaint states causes of action for breach of contract (the purchase agreement), breach of the implied covenant of good faith and fair dealing, and seeks specific performance of the purchase agreement as against Cal Burton while the causes of action against the Bank are for intentional misrepresentation, promissory fraud, negligent misrepresentation, and declaratory relief.

Cal Burton mistakenly concludes, however, that "[p]laintiff does not allege that [the Bank] and [Cal] Burton are co-obligors on a single contract debt, or that they are joint tortfeasors." Specifically, he disregards the fact that the complaint provides an avenue by which he could be found liable on the tort claims. The complaint states: "Plaintiff is informed and believes, and based thereon, alleges that each of the named Defendants are responsible in some manner for the occurrences herein alleged, and Plaintiff's damages as herein asserted were proximately caused by such Defendants. Plaintiff is informed and believes, and upon such information and belief alleges that at all times herein mentioned each of the Defendants were the agent, employee, servant, partner, guarantor, or successor of each of the named Defendants and in doing the things herein asserted, were acting within such course and scope. Plaintiff is also informed

9

and believes and upon such information and belief alleges that at all relevant times mentioned herein, Defendants, and each of them, were joint venturers with each, every, and all other Defendants and said Defendants were acting in furtherance of said joint venture." Based on this allegation (the agency allegation), we conclude, as the trial court did, that Cal Burton and the Bank are joint tortfeasors within the meaning of section 877.6.

Cal Burton does not analyze or discuss the agency allegation. Indeed, his only reference to it is to say that "where 'good faith' is contested, conclusory allegations as to the settling parties' liability are insufficient[,]" citing *Greshko v. County of Los Angeles* (1987) 194 Cal.App.3d 822, 834. The issue in *Greshko* was whether substantial evidence supported the trial court's finding that a settling defendant was unlikely to be found liable to an accident victim. The settling defendant submitted a declaration by its attorney giving his general opinion (without foundation or other evidentiary support) that his client would not be found liable. (*Id.* at pp. 831–832.) The opposing party (the plaintiff in the indemnity action, and a co-defendant in a personal injury action) submitted testimony by two experts suggesting the settling defendant was at least partially responsible for the victim's substantial injuries. (*Id.* at pp. 832–833.) The Court of Appeal concluded the court abused its discretion in disregarding the expert evidence as "self-serving" and instead crediting the attorney's declaration, which lacked foundation, specificity, and evidentiary support. (*Id.* at pp. 834–836.)

*Greshko* is inapposite. The court did not improperly rely on the agency allegation as evidence of Cal Burton's liability on any of the causes of action at issue, as was the case in *Greshko*.

10

Instead, it properly relied on the agency allegation to evaluate whether Cal Burton may be liable as a joint tortfeasor, i.e., to assess plaintiff's legal theories and determine the applicability of the statute.

Having concluded that section 877.6 applies, we turn to Cal Burton's remaining contentions.

## 2. Cal Burton fails to establish prejudicial error.

Cal Burton contends the court's finding that the $150,000 settlement amount is "in the ballpark" of the Bank's probable liability is unsupported by substantial evidence. Specifically, he argues the Bank failed to present any analysis or evidence of its proportionate liability. We disagree and conclude Cal Burton failed to carry his burden below to establish the settlement was not made in good faith. Further, he fails to explain why the court's approval of the settlement, if erroneous, is prejudicial to him.

### 2.1. Standard of Review and Applicable Legal Principles

The procedure for a good faith settlement determination is set forth in section 877.6. In an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt, "a settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement and a proposed order." (§ 877.6, subd. (a)(2).) After such an application is made, "a nonsettling party may file a notice of motion to contest the good faith of the settlement." (*Ibid.*) "The party asserting the lack of good faith shall have the burden of proof on that issue." (*Id.*, subd. (d).)

11

"The factors to be taken into account in the determination of whether a settlement is in 'good faith' include a rough approximation of the plaintiff's total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than if found liable after a trial. (*Tech-Bilt,* [*Inc. v. Woodward-Clyde & Associates* (1985)] 38 Cal.3d [488,] 499 [(*Tech-Bilt*)].) Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed at injuring the interests of nonsettling defendants. (*Ibid.*)" (*Dole Food Co., Inc. v. Superior Court* (2015) 242 Cal.App.4th 894, 909 (*Dole Food*).) Because every case is unique, "[t]he *Tech-Bilt* factors are nonexhaustive and 'may not apply in all cases.' [Citation.]" (*Id.* at p. 909; see *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 968 (*Cahill*) [noting "each case must be decided based on its particular circumstances and the trial court may consider its own judicial experience"].)

A party contesting the good faith of a settlement must "demonstrate … that the settlement is so far 'out of the ballpark' in relation to" the factors identified by our Supreme Court "as to be inconsistent with the equitable objectives of the statute." (*Tech-Bilt, supra*, 38 Cal.3d at pp. 499–500.) " '[A] "good faith" settlement does not call for perfect or even nearly perfect apportionment of liability. In order to encourage settlement, it is quite proper for a settling defendant to pay less than his proportionate share of the anticipated damages. What is required is simply that the settlement not be grossly disproportionate to the settlor's fair share.' " (*PacifiCare of California v. Bright*

*Medical Associates, Inc*. (2011) 198 Cal.App.4th 1451, 1465; *Dole Food, supra,* 242 Cal.App.4th at p. 909.)

The determination as to whether a settlement is in good faith is a matter left to the discretion of the trial court. (§ 877.6, subd. (d); *Tech-Bilt, supra,* 38 Cal.3d at p. 499; *Mattco Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1349, 1350, fn. 6 (*Mattco Forge*).) " 'On appellate review, a trial court's determination of good faith of a settlement involving the resolution of factual issues will be upheld if supported by substantial evidence. [Citation.]' [Citation.]" (*Dole Food, supra,* 242 Cal.App.4th at p. 909.)

### 2.2.   Burden Shifting and Relevant Evidence

As noted, "[t]he party asserting the lack of good faith shall have the burden of proof on that issue." (§ 877.6, subd. (d).) Specifically, "[o]nce there is a showing made by the settlor of the settlement, the burden of proof on the issue of good faith shifts to the nonsettlor who asserts that the settlement was not made in good faith. [Citations.] If contested, declarations by the non-settlor should be filed which in many cases could require the moving party to file responsive counterdeclarations to negate the lack of good faith asserted by the nonsettling contesting party." (*City of Grand Terrace v. Superior Court* (1987) 192 Cal.App.3d 1251, 1261–1262.)

### 2.2.1.   The Bank's Evidence

In support of its petition for a good faith settlement determination, the Bank provided a copy of the settlement agreement. As noted, the Bank agreed to pay plaintiff $150,000 in exchange for plaintiff's release of all claims against it. The Bank contended the settlement was reasonable because plaintiff's

13

tort claims against it were barred as a matter of law by the economic loss rule, which precludes a plaintiff from recovering in tort damages sustained as a result of a breach of contract. The Bank submitted copies of plaintiff's discovery responses, in which plaintiff conceded the damages he suffered related solely to the breach of the purchase agreement.[4]

### 2.2.2. Cal Burton's Evidence

In opposition, Cal Burton submitted several declarations in support of his opposition, none of which addressed issues relating to the Bank's liability. The first, by his attorney, described attempted settlement discussions with plaintiff. The beneficiary's declaration related to his failed attempt to obtain a loan against the Crenshaw properties. A tenant leasing space at the Crenshaw properties also provided a declaration describing his relationship with one of the trustors and an interaction with plaintiff. And Cal Burton's declaration detailed the beneficiary's attempt to obtain a loan against the Crenshaw properties, his own attempts to reduce the amount of the federal tax lien, and his opinion that the sale of the Crenshaw properties to plaintiff would not be in the interest of the trust because the properties were then worth nearly $3 million, far more than the agreed-upon sale price of $685,000.

### 2.3. Analysis

We begin with the first (and arguably most important) *Tech-Bilt* factor, the Bank's potential and proportionate liability to plaintiff. (See *Mattco Forge, supra*, 38 Cal.App.4th at p. 1350.) We conclude this factor is dispositive on the facts of this case.

---

[4] The Bank did not submit any additional evidence with its reply brief.

Plaintiff asserted three fraud claims against the Bank: intentional misrepresentation, negligent misrepresentation, and promissory fraud.[5] " 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) Damages are an essential element of a fraud claim. (E.g., *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1453.)

Plaintiff generally alleged that at the time the parties signed the purchase agreement and thereafter, the Bank falsely represented that it owned the Crenshaw properties and could sell them to plaintiff, that it was seeking permission from the Los Angeles Superior Court to proceed with the sale, and that it intended to comply with the terms of the purchase agreement. He further alleged that he relied on these misrepresentations to his detriment.

Generally, a plaintiff may not recover damages in tort that relate to a breach of contract. (E.g., *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 923 (*Sheen*) [noting the well-established principle that " 'there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties' "].) Instead, a party to a contract may recover in an action for breach of contract. Here, the Bank established that plaintiff's only damages arose from the breach of the purchase agreement. Indeed, plaintiff

---

[5] Plaintiff's fourth claim against the Bank is a request for declaratory relief.

admitted that fact in response to form interrogatories from the Bank. By proving that plaintiff would be unable to recover any damages on his fraud claims, the Bank conclusively established it would not be liable on those claims insofar as they related to a breach of the purchase agreement. In other words, the Bank established that its "proportionate liability" for plaintiff's damages was zero. And as this is the only *Tech-Bilt* factor addressed by Cal Burton, we presume the other factors support the court's order. We conclude, therefore, the court did not abuse its discretion in finding that the parties' $150,000 settlement of claims was made in good faith.

Cal Burton attacks the court's ruling on three grounds. First, he asserts "there is substantial evidence that [the Bank] engaged in fraudulent conduct in order to induce Plaintiff to enter the Contract, including its concealment of the dispute between the beneficiary and [the Bank], as well as its affirmative, written representations that it had authority to sell Crenshaw while refusing to do so absent court approval." And as Cal Burton correctly notes, a party to a contract may assert tort claims, including fraud, against the other party to the contract where tortious conduct unrelated to the breach of contract occurs. (See *Erlich v. Menezes* (1999) 21 Cal.4th 543, 551–552 [explaining that "[t]ort damages have been permitted in contract cases" when "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm"]; *Sheen, supra,* 12 Cal.5th at pp. 923–924 [citing *Erlich*].) But that is not the case here. Even if there is some evidence supporting some elements of the fraud claims, plaintiff concedes no damages independent of the damages arising from the breach of the purchase agreement

16

resulted from the alleged fraudulent conduct. As just explained, plaintiff's fraud claims fail without proof of damages independent of the damages relating to breach of the purchase agreement.

Second, Cal Burton argues repeatedly that the Bank offered no evidence of its *proportionate* liability. He states, for example, that "[t]here is no evidence of the total amount of jointly shared liability among [the Bank] and [Cal] Burton," and he criticizes the Bank for failing to offer any analysis of plaintiff's total damages as compared to the amount of the settlement. If there was any evidence that the Bank could be liable on plaintiff's tort claims, an analysis of proportionate responsibility for plaintiff's total damages might be necessary. But where, as here, it is conclusively established that the claims against a settling party are barred as a matter of law, no analysis of proportionate responsibility is required. In other words, because the Bank established it cannot be found liable on the claims asserted against it, any analysis of the Bank's *share* of potential liability to plaintiff would be nonsensical. (See *Cahill*, *supra*, 194 Cal.App.4th at pp. 964–965 [where evidence established plaintiff's recovery from settling defendant would be "insubstantial, if any," court reasonably concluded defendant "would likely have no proportionate liability" for plaintiff's total recovery].) Relatedly, Cal Burton complains that the court's order does not include any specific factual findings supporting the conclusion that the Bank is not liable as a matter of law. But on appeal, we presume the judgment of the trial court is correct and will affirm on any ground supported by the record. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Estate of Beard* (1999) 71 Cal.App.4th 753, 776–777; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19.) And as we have said, the

17

Bank provided conclusive evidence that plaintiff would not be able to prove damages independent of the damages resulting from the breach of the purchase agreement.

Third, analogizing to *Mattco Forge*, Cal Burton asserts the court's finding that the settlement was made in good faith rests on unsupported assumptions rather than substantial evidence. In *Mattco Forge*, the Court of Appeal considered whether the trial court abused its discretion in finding a settlement was made in good faith. In a prior action, Mattco sued General Electric (G.E.) in federal court, claiming G.E.'s elimination of Mattco as an approved subcontractor was racially motivated. Helmer & Neff represented Mattco in that action. To help establish Mattco's damages, Arthur Young & Co. (Young), an accounting firm, was retained as a consultant and expert witness. (*Mattco Forge, supra*, 38 Cal.App.4th at p. 1343.) After the court found that Mattco fabricated documents to inflate its damages claim, Mattco dismissed its case against G.E. with prejudice. (*Ibid.*)

Mattco then sued Young for professional negligence; Young filed a cross-complaint against Helmer & Neff alleging fraud, indemnity, and partial indemnity. (*Mattco Forge, supra*, 38 Cal.App.4th at p. 1344.) Helmer & Neff, which was not named as a defendant in plaintiff's action, entered into a sliding scale settlement with Mattco that guaranteed Mattco a minimum $750,000 recovery in its suit against Young (e.g., if Mattco recovered $600,000 at trial, Helmer & Neff would provide an additional payment of $150,000.) (*Id.* at p. 1345.) The settlement stated the present value of the guarantee by Helmer & Neff was $250,000. The trial court found the settlement was made in good faith and Young appealed. (*Id.* at pp. 1345–1346.)

18

The Court of Appeal reversed. The total estimated value of plaintiff's damages was $39 million. (*Mattco Forge, supra*, 38 Cal.App.4th at p. 1350.) In seeking approval of the settlement, however, Helmer & Neff offered no evidence regarding the extent of its liability to the plaintiff. Instead, it used seemingly random assumptions regarding the plaintiff's likelihood of success, plaintiff's share of fault, and its own share of the total liability: "Mattco's total recovery in the underlying action would have been $39 million. Assuming Mattco had only a 50/50 chance of prevailing against G.E., its damages would have been about $20 million. Assuming Mattco were 50 percent at fault for the events giving rise to the dismissal of the underlying action, its damages would have been $10 million. Further assuming Helmer & Neff's share of fault in the production of the noncontemporaneous documents was not more than 5 or 10 percent, the settling attorneys' share of the damages should not exceed $500,000 to $1 million." (*Id*. at pp. 1350–1351.) The Court of Appeal concluded the trial court abused its discretion in approving the settlement in part because there was no substantial evidence the settlement was in the ballpark of Helmer & Neff's proportionate liability. (*Id*. at p. 1352.)

Cal Burton claims this case is analogous to *Mattco Forge* because the Bank did not submit any evidence of its *proportionate* liability. But in *Mattco Forge*, the settling defendant conceded it bore some responsibility for the plaintiff's damages, thereby raising the issue of proportionate fault. Here, by contrast, the Bank argued—and successfully established— that it is not liable to plaintiff on his fraud claims. Moreover, the Bank offered conclusive evidence to support its argument, unlike the settling defendant in *Mattco Forge*, which presented

argument and assumptions—but no evidence—about its potential liability to the plaintiff.

For the reasons discussed, we conclude Cal Burton has failed to establish any error by the trial court. But even if the court did err in approving the settlement, Cal Burton has also failed to explain how the settlement prejudices him. He simply asserts, without explanation, that the order "materially impairs [his] rights as Successor Trustee." An appellant has the burden not only to show error but prejudice from that error. (Cal. Const., art. VI, § 13.) If an appellant fails to satisfy that burden, his argument will be rejected on appeal. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) "[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. [Citations.] Nor will this court act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial. [Citations.]" (*Ibid*.)

## DISPOSITION

The order is affirmed. Respondents Joseph Shabani and Regions Bank shall recover their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.

21